## UNITED STATES DISTRICT COURT DISTRICT OF PUERTO RICO

ADA MERCEDES CONDE VIDAL and
IVONNE ÁLVAREZ VÉLEZ; MARITZA
LÓPEZ AVILES and IRIS DELIA RIVERA
RIVERA; JOSÉ A. TORRUELLAS IGLESIAS
and THOMAS J. ROBINSON; ZULMA
OLIVERAS VEGA and YOLANDA ARROYO
PIZARRO; JOHANNE VÉLEZ GARCÍA and
FAVIOLA MELÉNDEZ RODRÍGUEZ; and
PUERTO RICO PARA TOD@S,

              Plaintiffs,

    v.

ALEJANDRO J. GARCIA PADILLA, in his
official capacity as Governor of the
Commonwealth of Puerto Rico; ANA RIUS
ARMENDARIZ, in her official capacity as
Secretary of the Health Department of the
Commonwealth of Puerto Rico; WANDA
LLOVET DIAZ, in her official capacity as
Director of the Commonwealth of Puerto Rico
Registrar of Vital Records; and MELBA ACOSTA
FEBO, in her official capacity as Director of the
Treasury in Puerto Rico,

              Defendants.

No. 3:14-cv-01253

**AMENDED COMPLAINT
FOR INJUNCTIVE AND
DECLARATORY RELIEF**

Plaintiffs Ada Mercedes Conde Vidal and Ivonne Álvarez Vélez, by and through their

attorney; and Plaintiffs Maritza López Aviles and Iris Delia Rivera Rivera; José A. Torruellas

Iglesias and Thomas J. Robinson; Zulma Oliveras Vega and Yolanda Arroyo Pizarro; Johanne

Vélez García and Faviola Meléndez Rodríguez; and Puerto Rico Para Tod@s, an organization

(collectively "Plaintiffs"), by and through their attorneys, file this Amended Complaint against

Defendants Alejandro J. García Padilla, Ana Rius Armendariz, Wanda Llovet Diaz, and Melba

Acosta Febo (collectively "Defendants"), and allege as follows:

-1-

**INTRODUCTION**

1.      Plaintiffs, all residents of the Commonwealth of Puerto Rico ("Commonwealth" or "Puerto Rico"), are five loving, committed same-sex couples who reside in Puerto Rico ("Plaintiff Couples") and an organization that represents lesbian, gay, bisexual, transsexual and transgender ("LGBT") people and their families in their struggle for social inclusion, equality and fairness in Puerto Rico.  Plaintiffs bring this action pursuant to 42 U.S.C. §§ 1983 and 1988 to challenge Defendants' discriminatory denial, pursuant to Puerto Rico's laws, of the freedom of the unmarried Plaintiff Couples and the unmarried LGBT members of Puerto Rico Para Todo@s to marry in the Commonwealth; and the discriminatory refusal to recognize marriages lawfully entered into in other jurisdictions by Plaintiff Couples and married LGBT people who are members of Puerto Rico Para Tod@s.  Plaintiffs seek declaratory and injunctive relief for Defendants' violation of their guarantees of liberty and equality under the Fourteenth Amendment to the United States Constitution, caused by Defendants' interpretation and enforcement of Article 68 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 221, and other laws in the Commonwealth that preclude Plaintiff Couples and LGBT people who are members of Puerto Rico Para Tod@s from marrying or having their marriages lawfully entered into in other jurisdictions recognized in Puerto Rico (hereinafter the Commonwealth's "Marriage Ban").

2.      Through the Marriage Ban, the Commonwealth and Defendants send a message that LGBT people who wish to marry or to have marriages recognized but who are prevented from marrying or gaining recognition by the laws of Puerto Rico ("Banned Couples") and their children are second-class citizens, against whom discrimination is acceptable, and who are undeserving of the legal sanction, respect, protections, and support that the couples permitted to

marry in Puerto Rico ("Accepted Couples") and their children receive automatically through marriage.

3.      Marriage plays a unique role in society as a universally recognized and celebrated hallmark of a couple's commitment to build a family together.  It confers upon couples a dignity and status of immense import.  The Plaintiff Couples and LGBT members of Puerto Rico Para Tod@s have formed committed, enduring bonds equally worthy of the respect the Commonwealth affords Accepted Couples in Puerto Rico.  Yet the Commonwealth, without adequate justification, has enacted, and Defendants have interpreted and enforced the Commonwealth's laws in ways that single out LGBT Puerto Ricans on the basis of sexual orientation and/or sex by excluding them from marriage.  The right to marry includes the right for Plaintiff Couples and LGBT members of Puerto Rico Para Tod@s, lawfully married in other jurisdictions, to remain married while in Puerto Rico.  Yet, by refusing to recognize and respect their lawful marriages entered into in other jurisdictions, Puerto Rico excludes LGBT Puerto Ricans lawfully married in other jurisdictions from marriage in Puerto Rico.

4.      The Marriage Ban inflicts serious and irreparable harm on Banned Couples and their children.  Maritza López Aviles and Iris Delia Rivera Rivera, and Zulma Oliveras Vega and Yolanda Arroyo Pizarro are not married, and each couple wishes to marry for the same reasons as Accepted Couples: to publicly declare their love and commitment before their family, friends, and community, and to give one another and any children that they are raising, or may raise in the future, the security and legal protections that marriage provides.  Ada Mercedes Conde Vidal and Ivonne Álvarez Vélez; José A. Torruellas Iglesias and Thomas J. Robinson; Johanne Vélez García and Faviola Meléndez Rodríguez; and married LGBT members of Puerto Rico Para Tod@s all entered into legally recognized marriages in other jurisdictions, but are treated as legal strangers

in the island they consider their home—a hurtful invalidation of their relationship, which frustrates their dreams, deprives them of dignity, drains them of resources, and denies them numerous state and federal protections that Accepted Couples readily enjoy.

5.     Members of the Banned Couples seek the freedom to marry – and be recognized as married to – the one unique and irreplaceable person each loves, and thereby to assume the responsibilities and obtain the myriad protections, obligations, and benefits conferred upon married couples and upon their children under Puerto Rico and federal law.

6.     The right to marry the person of one's choice, to remain married as one moves or travels to and from Puerto Rico and other locales, and to direct the course of one's life in this intimate realm without undue government interference is one of the fundamental liberty interests protected for all by the Due Process Clause of the Fourteenth Amendment to United States Constitution.  The Commonwealth's exclusion of Plaintiff Couples and other Banned Couples from marriage based on their sexual orientation and/or sex of the individuals in the couples violates their fundamental right to marry without any compelling, important or even legitimate justification.

7.     The Plaintiff Couples who have children and the LGBT members of Puerto Rico Para Tod@s who have children seek to provide their children with the protections, security, respect, and benefits conferred upon the children of married parents, and to end the stigma and humiliation engendered by a legal framework that designates their families as inferior and unworthy of marriage.  The Commonwealth's Marriage Ban and Defendants' interpretation and enforcement of it also interferes with the constitutionally protected liberty and privacy interests in familial association and familial integrity of the children of some of the Plaintiff Couples and of

the children of the LGBT members of Puerto Rico Para Tod@s, without any compelling, important or even legitimate justification.

8.     The Commonwealth also has deprived each individual in Plaintiff Couples and the LGBT members of Puerto Rico Para Tod@s of their guarantee of equality under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution by denying them the right to marry the person of their choice, based solely on their sexual orientation and/or sex.  Likewise, Puerto Rico denies the children of Banned Couples equal access to the dignity, legitimacy, protections, benefits, support, and security conferred on children of Accepted Couples under Puerto Rico and federal law.

9.     Our courts and our society have discarded, one by one, marriage laws that violate the United States Constitution's mandates of liberty and equality, including laws that banned marriage between members of different races and that relegated married women to property. Eliminating these unconstitutional marriage rules has allowed the institution of marriage to retain its relevance and to continue to nurture families.  Eliminating laws that exclude LGBT people from marriage based on sexual orientation or sex, as has already occurred in at least nineteen states and the District of Columbia, is no different.

10.     Because the freedom to marry is one of the vital personal rights central to the orderly pursuit of happiness, Plaintiffs seek equal access to the freedom to marry and equal recognition of their marriages entered into in other jurisdictions and to eliminate the myriad serious harms inflicted on Plaintiffs and their families by the Marriage Ban and Defendants' enforcement of it.

**JURISDICTION AND VENUE**

11.     Plaintiffs bring this action under 42 U.S.C. §§ 1983 and 1988 to redress the deprivation under color of state law of rights secured by the United States Constitution.

12.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the Constitution and laws of the United States.

13.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because all Defendants reside within the District of Puerto Rico, Defendants reside and have offices within the district, and/or a substantial part of the events that gave rise to Plaintiffs' claims occurred, and will continue to occur, within the District of Puerto Rico.

14.     This Court has the authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

15.     This Court has personal jurisdiction over Defendants because they are domiciled in the Commonwealth and/or have otherwise made and established contacts with the District sufficient to permit the exercise of personal jurisdiction over them.

**PARTIES**

A.     **Plaintiffs**

**Ada Mercedes Conde Vidal and Ivonne Álvarez Vélez**

16.     Plaintiffs Ada Mercedes Conde Vidal, 53, and Ivonne Álvarez Vélez, 67, are a same-sex couple residing in San Juan, Puerto Rico.  They have been in a loving, committed relationship for more than fourteen years.  Ada is an attorney, primarily practicing bankruptcy law, admitted in Puerto Rico and the United States District Court in Puerto Rico.  Ivonne is an

accountant and financial advisor. Ada's daughter was thirteen years old when Ada and Ivonne committed to a life together. Since then, Ivonne and Ada have cared for her together.

17.     Desiring to express their love and commitment, and to protect their family, Ada and Ivonne married in Massachusetts on August 2, 2004, in the presence of a few friends. To their great sadness, neither Ivonne's brother nor Ada's daughter, who has required repeated heart surgeries, were able to travel from Puerto Rico to Massachusetts to attend the ceremony, due to financial and travel limitations. They and their daughter had hoped she could be the ring bearer at the ceremony.

18.     When the couple returned home, because their marriage was unrecognized under Puerto Rico law, they paid to execute powers of attorney to help document and ensure each could make health care decisions for the other. As they get older, they worry more that with their marriage unrecognized, their relationship and rights to decision-making will not be recognized in an urgent medical or other important situation.

19.     Ivonne had hoped to adopt Ada's daughter, but she cannot, since in Puerto Rico only couples recognized as validly married are allowed to adopt together. Because Ivonne's relationship to the couple's daughter is not legally recognized, the family fears that Ivonne may be excluded from medical decisions or the hospital room when their daughter is the most vulnerable.

20.     Ada and Ivonne are also concerned that because Ada is not recognized as Ivonne's spouse, under Puerto Rico inheritance law, Ada will not be recognized as the surviving spouse, and Ivonne's estate will be transferred to the Commonwealth of Puerto Rico unless the couple pays to execute a costly will.

21.     Because their marriage is unrecognized in Puerto Rico, Ada and Ivonne cannot file Commonwealth of Puerto Rico income tax returns as a married couple.

**Maritza López Aviles and Iris Delia Rivera Rivera**

22.     Plaintiffs Maritza López Aviles, 58, and Iris Delia Rivera Rivera, 56, are a same-sex couple residing in Toa Alta, Puerto Rico.  Iris operates a food truck on the industrial docks in San Juan, and Maritza is a homemaker. Maritza and Iris have known each other since high school.  While students at the Interamerican University of Puerto Rico, they realized that their feelings were deeper than friendship.  Maritza and Iris have been in a loving, committed relationship for the past thirty-eight years.   Faith is important to both Maritza and Iris.  In 1978 they presented themselves as a couple before God, in church, and asked God to bless their relationship.  They are now active members of their church in Bayamón.

23.     In 1981, after college, Iris enlisted in the National Guard.  She served for ten years and was deployed to Panama in 1989 as part of Operation Just Cause and to Iraq in 1990-1991 as part of the first Gulf War.  While the different-sex spouses of active duty soldiers received information, counseling, and services, the military did not recognize Maritza and Iris' relationship and did not provide them with similar benefits.  Maritza recalls vividly the anxiety she experienced because she did not know where Iris was or whether she was safe.  The family qualifies for less compensation and benefits than married soldiers/veterans with dependents, because Maritza and Iris are unmarried.

24.     Maritza and Iris have an eighteen-year-old daughter, who has lived with them since she was four weeks old.  Maritza and Iris have raised her as their own, although Maritza only officially obtained legal custody in 2010 when their daughter's biological mother died of cervical cancer.  They wish for her to have the security of a family protected by marriage.

25.     Maritza and Iris want to marry each other in Puerto Rico.  They do not have the economic resources to travel to and plan a wedding in a jurisdiction where marriage of same-sex couples is permitted.  Moreover, they want to marry at home in Puerto Rico, where they were both born and raised and where they have large, supportive families with whom to celebrate their wedding.

26.     Maritza and Iris urgently want to marry to protect Maritza, who depends economically on Iris, should something happen to Iris. Maritza has primarily been a homemaker, and she will not be entitled to Social Security spousal benefits unless she is permitted to marry Iris.  Additionally, Iris cannot pass on her veteran's survivor benefits to Maritza, since Iris and Maritza cannot marry.

27.     Maritza and Iris worry that because they are not married, hospital staff may prevent them from visiting one another if either is hospitalized.  This worry is based on past experience.  In 2007 and again in 2008, Maritza was hospitalized for intestinal surgery, but the hospital staff refused to allow Iris to see Maritza.  Both times, Iris was able to get an update about Maritza's status only after extensive arguing.  Maritza and Iris believe that they would be more secure medically, financially, and emotionally if their relationship were respected and recognized like Accepted Couples' relationships, and others would view their relationship with more legitimacy if they could tell them that that they were married.

**José A. Torruellas Iglesias and Thomas J. Robinson**

28.     Plaintiffs José A. Torruellas Iglesias, 57, and Thomas J. Robinson, 56, are a same-sex couple residing in San Juan, Puerto Rico.  José works for the Autoridad de Energía Eléctrica de Puerto Rico (the Puerto Rico Electric Power Authority, or "PREPA") as a customer

service representative.  Thomas was previously a technical writer in Chicago and later taught English in San Juan; he now volunteers at a library in Guaynabo.

29.        José and Thomas met in 2001, when Thomas was on vacation in Puerto Rico.  At the time Thomas lived in Chicago, and José and Thomas fell in love over the phone, sustaining their relationship through long telephone calls and infrequent visits.  In June 2005, after three years of a long-distance relationship, Thomas moved to Puerto Rico to live with José.

30.        In 2007, José and Thomas decided to get married to make their relationship official.  They value commitment and the structure and formality of marriage.  Thomas's parents have been married for sixty-six years, and José's parents were married for thirty-seven years before his father's death.  José and Thomas were married in Toronto, Canada on May 28, 2007.  Thomas's entire family was present, but José's family could not make the trip from Puerto Rico to Canada.

31.        José has been trying to add Thomas to his health insurance plan through his employer, PREPA, since 2007.  Employees of PREPA with different-sex spouses can obtain health insurance for their spouses, but José has not been able to obtain health insurance for Thomas, despite raising the issue many times over the years and requesting help from his union.  The couple was paying for private insurance for Thomas, but cancelled this insurance in March 2014 due to the cost.  Now Thomas obtains his health coverage through Mi Salud, Puerto Rico's government-administered health insurance.

32.        José would like to be able to claim Thomas as his dependent on his taxes. In February 2014, José called the Puerto Rico tax department and asked to be able to file a joint tax return with his husband.  The employee who answered the call said, "That's never going to

happen." Because Thomas is not working, José and Thomas believe they would owe less money in taxes if their marriage were recognized in Puerto Rico.

### Zulma Oliveras Vega and Yolanda Arroyo Pizarro

33.     Plaintiffs Zulma Oliveras Vega, 43, and Yolanda Arroyo Pizarro, 43, are a same-sex couple currently residing in Carolina, Puerto Rico. Zulma was born and raised in San Germán, Puerto Rico; Yolanda is from Guaynabo. Zulma currently works for the Social Security Administration in Puerto Rico. Yolanda is a technology educator, a poet, and an author. Zulma met Yolanda at a poetry event in Old San Juan, and asked her out after the event. They talked for hours, walking in the moonlight of Old San Juan, and started to fall in love. Soon after, they decided to build a life with one another and moved in together in October 2009. Yolanda has a sixteen-year-old daughter.

34.     Yolanda has asthma, which often requires medical care. In June 2014, Yolanda was hospitalized in the Hospital Auxilio Mutuo with bronchitis after she experienced complications with her asthma. Without the security of marriage, Zulma and Yolanda are concerned about what would happen in a medical emergency.

35.     Zulma and Yolanda want to marry in Puerto Rico because they are from Puerto Rico, and it is their home. In July 2012, Yolanda and Zulma held a commitment ceremony in a restaurant in San Juan before their families and friends, exchanging vows and rings. They would like their commitment to each other to be recognized by the Commonwealth through marriage.

### Johanne Vélez García and Faviola Meléndez Rodríguez

36.        Plaintiffs Johanne Vélez García, 49, and Faviola Meléndez Rodríguez, 37, are a same-sex couple residing in Guaynabo, Puerto Rico.   They met in December 2007 and shortly afterwards decided to build a life together.   They moved in together in 2008.

37.        In 2009, Johanne was nominated by then-Puerto Rico Governor Luis Fortuño as Procuradora de las Mujeres de Puerto Rico ("Women's Advocate of Puerto Rico"), a ten-year designation.   She held this position for four months, until the Puerto Rico Senate rejected her nomination.   Among the reasons stated publicly for rejecting her nomination was the fact that she was a known lesbian, had spoken publicly about her sexual orientation, and supported marriage equality.   Following Johanne's dashed confirmation, she served as Executive Director of the Women's Caucus for the Puerto Rico House of Representatives and worked as a grants management consultant for Governor Fortuño.   In January 2013, Johanne and Faviola opened a nonprofit venture together, Frauen Group, Inc.

38.        Johanne and Faviola decided to marry in New York after watching Governor Andrew Cuomo, on television, sign New York's marriage equality bill in June 2011.   They had to plan from afar for their marriage, working out the details for the location, travel, officiant, limousine, flowers, and food and beverages.   On May 26, 2012, they were married at the Strand Hotel in New York City in front of thirty family members and friends.   For Johanne and Faviola, it was spectacular to finally take their vows to honor each other and stay together forever.

39.        Johanne and Faviola want to grow their family together.   In 2011 they decided to become adoptive parents, but because same-sex couples are not permitted to adopt jointly in Puerto Rico, Johanne alone completed the adoption application with at an adoption agency operated by the City of San Juan.   Johanne and Faviola completed the interview process and home observation together as a couple.   Johanne and Faviola are frustrated because, despite

their preparedness, the agency has not contacted them since they completed their application. They worry they have not been selected as adoptive parents due to the discrimination against same-sex couples in Puerto Rico.  Johanne and Faviola also worry about raising children in a place that does not respect their marriage.

40.        As a result of Puerto Rico's Marriage Ban, Johanne and Faviola must file taxes as single individuals, even though they would owe less money in taxes if Puerto Rico recognized their marriage and they could file jointly.  Also because their marriage is not recognized, Johanne and Faviola have each been forced to purchase individual health insurance plans, and to safeguard each other's future wellbeing with a legally binding will.

**Puerto Rico Para Tod@s**

41.   Plaintiff Puerto Rico Para Tod@s is a leading organization advocating for LGBT people and their families in the Commonwealth of Puerto Rico.  It has members throughout the Commonwealth and works collaboratively to secure, protect, and defend the equal civil rights and welfare of lesbian, gay, bisexual, transsexual and transgender people in the Commonwealth. Many of Puerto Rico Para Tod@s' members want to marry a life partner in Puerto Rico, but have been prevented from doing so by Puerto Rico's Marriage Ban.  Many of Puerto Rico Para Tod@s' LGBT members have married in jurisdictions outside of Puerto Rico, but their marriages are not recognized in Puerto Rico due to the Commonwealth's Marriage Ban and Defendants' interpretation and enforcement of it.  Many of the LGBT members of Puerto Rico Para Tod@s who are in committed, loving relationships, have children, who are being denied the freedom to belong to families headed by married parents and the protections and benefits that would result if their parents could marry or have their marriages recognized in Puerto Rico.

**B.      Defendants**

42.      Defendant Alejandro J. García Padilla is sued in his official capacity as Governor of the Commonwealth of Puerto Rico.  In his capacity as governor, García Padilla executes the laws of the Commonwealth of Puerto Rico, including the Marriage Ban, and supervises the official conduct of all executive and ministerial officers who implement and enforce the Marriage Ban. Defendant García Padilla has publicly supported the Marriage Ban, and has knowingly encouraged, condoned and acquiesced in the acts excluding Plaintiffs from marriage and marriage recognition. Defendant García Padilla is a person within the meaning of 42 U.S.C. § 1983 and has acted under color of state law at all times relevant to this amended complaint.

43.      Defendant Ana Rius Armendariz (Rius) is sued in her official capacity as Secretary of the Health Department of the Commonwealth of Puerto Rico. Defendant Rius's duties include, among others, preparing, printing and furnishing the forms and instructions to be used for the registration of births, marriages, or deaths in the Commonwealth. Rius also supervises and manages the Commonwealth Demographic Registry and the Commonwealth of Puerto Rico Registrar of Vital Statistics, Defendant Wanda Llovet Diaz.  Defendant Rius ensures compliance in all of these functions with the relevant Commonwealth laws, including those that exclude unmarried Banned Couples from marriage and married Banned Couples from recognition.  Defendant Rius is a person within the meaning of 42 U.S.C. § 1983 and has acted under color of state law at all times relevant to this amended complaint.

44.      Defendant Wanda Llovet Díaz (Llovet) is sued in her official capacity as the Director of the General Registry of Vital Statistics of the Commonwealth.   In her official capacity, Defendant Llovet is "in charge of all matters connected with the registration of births, marriages and deaths which may occur or take place in Puerto Rico."  24 L.P.R.A. § 1071.  Llovet

also ensures compliance in all of these functions with the relevant Commonwealth laws, including those that exclude unmarried Banned Couples from marriage and married Banned Couples from recognition.  Defendant Llovet is a person within the meaning of 42 U.S.C. § 1983 and has acted under color of state law at all times relevant to this amended complaint.

45.     Defendant Melba Acosta Febo (Acosta) is sued in her official capacity as Director of the Treasury in Puerto Rico.  Defendant Acosta's duties include overseeing tax administration and revenue collection for the Commonwealth and being directly responsible for the direction, control, and operation of the Department of Treasury.  Defendant Acosta ensures compliance in all of these functions with the relevant Commonwealth laws, including those that preclude same-sex married couples from filing a joint Commonwealth income tax return.  Defendant Acosta is a person within the meaning of 42 U.S.C. § 1983 and has acted under color of state law at all times relevant to this amended complaint.

46.     Each Defendant, and those subject to their supervision, direction, and control, intentionally performed, participated in, aided, and/or abetted in some manner the acts averred herein, proximately caused the harm averred herein, and will injure Plaintiffs irreparably if not enjoined.

## STATEMENT OF FACTS

47.     Plaintiff Couples all are residents of Puerto Rico who experience the same joys and shoulder the same challenges of family life as their neighbors, co-workers, and other community members who are free to marry.  Plaintiff Couples include productive, contributing, tax-paying members of society who support their committed partners and nurture their children, but currently are forced to do so without the same dignity and respect afforded by the Commonwealth to other families through access to marriage.  The Commonwealth's exclusion of

Banned Couples from marriage based on sexual orientation and/or sex of the individuals in the couples subjects them to legal vulnerability and related stress, and deprives them of equal dignity and security.  Through its Marriage Ban and Defendants' interpretation and application of it, the Commonwealth and Defendants send a purposeful message that the Commonwealth views LGBT people and their children as second-class members of society undeserving of the legal sanction, respect, and dignity Accepted Couples and their children enjoy.

48.    But for the fact that they are barred by Puerto Rico's Marriage Ban, each member of the unmarried Plaintiff Couples is legally qualified to marry under the laws of Puerto Rico and wishes to marry their same-sex partner in Puerto Rico, and Plaintiff Couples legally married in other jurisdictions wish to have their marriages recognized in Puerto Rico.

49.    Though they strongly desire to marry, neither of the unmarried Plaintiff Couples, Maritza López Aviles and Iris Delia Rivera Rivera, and Zulma Oliveras Vega and Yolanda Arroyo Pizarro, have applied for marriage licenses in Puerto Rico, because doing so is a crime under 33 L.P.R.A. § 4757 (misdemeanor to marry another person in a marriage prohibited by civil law).

50.    Puerto Rico Para Tod@s has LGBT members who want to marry in Puerto Rico and who have married in other jurisdictions, but whose marriages the Commonwealth of Puerto Rico does not recognize because of the members' sexual orientation and/or sex.

**A.    Puerto Rico's Marriage Ban Singles Out LGBT People and Excludes Them From Marriage.**

51.    In 1997, the Commonwealth enacted a statute defining marriage as "a civil contract whereby a man and a woman mutually agree to become husband and wife." 31 L.P.R.A.

§ 221. This legislation also explicitly banned Puerto Rico from recognizing marriages "between persons of the same sex or transsexuals" performed in other jurisdictions. *Id.*

52.     There are no legitimate public policies that justify the legal disabilities and detriments, and societal disadvantages that the Marriage Ban imposes on Banned Couples and their children. The history of the Marriage Ban's enactment and its own text demonstrate that interference with the equal dignity of LGBT people was its essence or purpose, rather than a mere side effect of this enactment.

53.     The purpose and effect of the Marriage Ban mirrors the purpose and effect of the federal Defense of Marriage Act ("Federal DOMA"), 28 U.S.C. § 1738C, passed by Congress in 1996, and struck down by the Supreme Court in *Windsor v. United States*, 133 S. Ct. 2675, 2693-95 (2013) ("*Windsor*"). Federal DOMA, among other things, singled out a class of same-sex couples legally married in a state or other jurisdiction and imposed a disability on the class by refusing to acknowledge their marriages, based on the sexual orientation and/or sex of the individuals who had married. The federal government's refusal to recognize those legal marriages, pursuant to the Federal DOMA, disqualified those who have legally married a same-sex partner from a vast range of federal benefits linked to marriage.

54.     In June 2013, when the United States Supreme Court in *Windsor* struck down the portion of the Federal DOMA that denied federal recognition to legally married same-sex couples, the Supreme Court observed that when government relegates same-sex couples' relationships to a second-tier status, the government demeans the couple, humiliates children now being raised by same-sex couples, deprives these families of equal dignity, and degrades them in addition to causing them countless tangible harms, all in violation of basic due process and equal protection principles.

**B.      Puerto Rico's Marriage Ban Inflicts Profound Harms and Injury Upon Plaintiffs and LGBT Members of Puerto Rico Para Tod@s.**

55.      Barring LGBT people from marriage disqualifies them from critically important rights and responsibilities under Puerto Rico law that Accepted Couples rely upon to protect one another and themselves, to secure their commitment to each other, and to safeguard their families. Marriage is the only route to access many rights and responsibilities; for others, marriage is the least complex and least expensive route.   By way of example only, the Marriage Ban denies Banned Couples who wish to marry:

a.      The ability to safeguard family resources under an array of laws that protect spousal finances, including for example, tax laws that grant married individuals the right to file jointly to reduce tax liability, and tax benefits when transferring or inheriting interests in real and personal property; the benefit of a homestead exemption; an exemption for a portion of a deceased spouse's personal estate from the deceased's debts or liabilities; the ability for the surviving spouse of a workers compensation beneficiary to receive compensation; and the ability for a spouse to receive unemployment compensation for a deceased claimant;

b.      Benefits for spouses and dependent children of members of the military and veterans;

c.      Tuition fee waivers to the spouses and dependent children of employees of public universities;

d.      Family health insurance coverage, including spousal health benefits;

e.      The benefit of the presumption that both spouses are parents to a child born during the marriage, including the automatic listing of a birth mother's spouse as a parent on a child's birth certificate;

f.      A streamlined and relatively inexpensive process for bringing children into the family through adoption, whether through joint adoption, or by one spouse adopting another spouse's child through a step-parent adoption;

g.      Retirement benefits, and surviving spouse annuity benefits for public employees;

h.      Family leave for a public employee to care for a spouse;

i.      In the event that a couple separates, access to an orderly dissolution process for terminating the relationship, assuring an equitable division of the couple's assets and debts, and adjudication of issues relating to custody, visitation, and support with respect to any children the couple may have.

j.      Death benefits for surviving spouses of firefighters, law enforcement, military members, and emergency medical services personnel who die in the line of duty, and additional death benefits for each dependent child;

k.      The ability to make caretaking decisions for one another in times of serious illness, including priority to make medical decisions for an incapacitated spouse;

l.      The ability to make decisions for one another at the time of death, including the ability to authorize an autopsy, the automatic right to make burial decisions and other decisions concerning disposition and handling of remains of deceased spouses; and

m.      The right to inheritance under the laws of intestacy and the right of a surviving spouse to an elective share;

56.      The Marriage Ban not only denies Plaintiffs, their children, and other Banned Couples access to protections, benefits, rights, and responsibilities afforded to Accepted Couples and their children under Puerto Rico law, it also denies them eligibility for a host of federal rights and responsibilities that span the entire United States Code and federal regulations.   Unmarried

couples are denied recognition for virtually all purposes throughout the more than 1,000 statutes and federal regulations relating to marriage – including laws that pertain to Social Security benefits, housing, taxes, criminal sanctions, copyrights, and veterans benefits.  Couples validly married in another jurisdiction and living in Puerto Rico may qualify for some federal benefits and protections, but the language of certain statutes and regulations, such as veterans' spousal benefits, copyright, and Social Security survivor benefits, references couples married under the law of their state of residence or domicile and therefore the Marriage Ban deprives Plaintiff Couples of the recognition of their marriages by the federal government.  Many of these deprivations drain family economic resources, causing financial harm not only to Banned Couples but to their children as well.

57.    In addition to the tangible harms listed above, Banned Couples are denied the unique social recognition that marriage conveys.  Without access to the familiar language and legal label of marriage, Plaintiffs are unable instantly or adequately to communicate to others the depth and permanence of their commitment, or to obtain respect for that commitment as Accepted Couples do, simply by invoking their married status.

58.    For example, many Banned Couples are rearing children in Puerto Rico. The substantive, societal, and dignitary inequities imposed on LGBT people in committed relationships include particular harms to their children, who are equally deserving of the stability, permanence, social recognition, and financial supports that are enjoyed by children of Accepted Couples in Puerto Rico.  Civil marriage affords official sanctuary to the family unit, offering parents and children critical means to secure parent-child legal bonds, and a familiar, public way of demonstrating those bonds to third parties.  Through the Marriage Ban, the Commonwealth and Defendants reinforce the view that the family ties of LGBT parents and their children are less

consequential, enduring, and meaningful than those of Accepted Couples and their children.  All members of the families subjected to the Marriage Ban, including children, must live with the vulnerability and stress inflicted by the lack of legal recognition of the Banned Couples' relationships and the ever-present possibility that others may question their familial relationships—in social, legal, educational, and medical settings and in moments of crisis. Banned Couples raising children in Puerto Rico cannot invoke their status as married in order to communicate to their own children and others the depth and permanence of their commitment to each other in terms that all members of society, even young children, readily understand. These are challenges that Accepted Couples, because their marriages are recognized, avoid by simple reference to being married.

59.    Plaintiffs' children and other children of Banned Couples are less secure legally and worse situated economically than children of Accepted Couples, due in part to expenses incurred in attempting to create legal protections that approximate some of those that are automatic through marriage.

60.    Puerto Rico's Marriage Ban, and Defendants' enforcement of it, triggers many private entities such as banks, insurers, and even health clubs to define "family" for purposes of an array of benefits and protections in ways that exclude same-sex couples and their children from important safety nets, such as private employer-provided health insurance for family members. The Commonwealth and Defendants also encourage disrespect and disparagement of Banned Couples and their children by others in workplaces, schools, businesses, and other major arenas of life, in ways that would be less likely to occur and more readily corrected if marriage were available.

61.     The government is a powerful teacher of discrimination to others.  By denying marriage to Banned Couples and disregarding the valid marriages of LGBT people, the Commonwealth and Defendants instruct all persons with whom these couples interact, including the couples' own children, that their relationships are less worthy than the relationships of others. Bearing the imprimatur of the government, Puerto Rico's Marriage Ban, and Defendants' enforcement of it, communicates a view that Banned Couples and their children are unfit for the dignity, respect, and stature afforded to Accepted Couples and their children, which encourages others to follow the government's example in discriminating against these Banned Couples, their children, and all lesbian, gay, bisexual, transsexual, and transgender people.

**C.     The Marriage Ban Is Not Even Rationally Related to a Legitimate Governmental Purpose, Let Alone Substantially Related to an Important Government Purpose or Narrowly Tailored to a Compelling Governmental Purpose.**

62.     No legitimate, let alone important or compelling, interest exists to exclude Banned Couples from marriage.  An individual's capacity to establish a loving and enduring relationship does not depend upon that person's sexual orientation or sex in relation to his or her life partner, nor is there a compelling or even a legitimate interest in preventing LGBT people and their children from belonging to families headed by a married couple or in denying them the spousal protections marriage provides.

63.     Neither history nor tradition can legally justify the Commonwealth's discriminatory Marriage Ban.  Marriage has remained a vital and enduring institution despite undergoing significant changes over time to meet changing social and ethical needs, including by the elimination of many former requirements of marriage now recognized as discriminatory or otherwise impermissible – such as coverture laws, requiring a woman's legal rights and obligations to be subsumed by those of her husband upon marriage, and bans on marriage

between people considered to be members of different races.   Puerto Rico is not bound to historic exclusions from marriage, and no excuse exists for the Commonwealth's continued discriminatory restriction.

64.    The Supreme Court has made clear that the law cannot, directly or indirectly, give effect to private biases, and has expressly rejected moral disapproval of lesbian and gay relationships as a legitimate justification for a law.

65.    Excluding Banned Couples from marriage does nothing to protect or enhance the rights of the couples who are permitted to marry in Puerto Rico.  Accepted Couples will continue to enjoy the same rights and status conferred by marriage regardless of whether Banned Couples are permitted to marry or have their marriages recognized in Puerto Rico.

66.    The Commonwealth's interest in child welfare is affirmatively harmed – not furthered – by the exclusion of LGBT people from marriage.   That exclusion injures these couples' children and benefits no others.

67.    There is no valid basis for Puerto Rico to assert a preference for parenting by Accepted Couples over Banned Couples.

68.    The Marriage Ban cannot be justified by any inability of Banned Couples to procreate.  Procreation is not a requirement of marriage, and many married people choose not to have children or are unable to do so, while many unmarried people procreate.  Puerto Rico has never restricted marriage to those capable of or intending to procreate, nor would it be constitutionally permissible to do so.  Moreover, Puerto Rico's Marriage Ban does not prevent LGBT people in committed, loving relationships from raising children with their life partners; rather, it deprives those families of protections, simply by virtue of the partners' sexual orientation and/or sex.  Couples targeted by the Puerto Rico Marriage Ban can and do bear

children, including through use of reproductive technology that is available to same-sex couples and different-sex couples alike, and bring children into their families through foster care and adoption.

69.     Excluding LGBT people from marriage harms their children, by depriving them of legal benefits and protections, by branding their families as inferior and less deserving of respect, and by encouraging private bias and discrimination.  Denying these couples the equal dignity and status of marriage humiliates the children now being raised by these couples, and makes it more difficult for the children to understand the integrity and closeness of their own family.

70.     The Marriage Ban does not make the children of Accepted Couples more secure. Accepted Couples' children will continue to enjoy the benefits that flow from their parents' marriages regardless of whether Banned Couples are permitted to marry.

71.     The Commonwealth's interest in the welfare of children raised by Banned Couples is as great as its interest in the welfare of children of Accepted Couples.  The family security that comes from the Commonwealth's official recognition and support of families headed by Banned Couples is no less important for these parents and their children than it is for Accepted Couples and their children.

### FIRST CLAIM FOR RELIEF

**Deprivation of Due Process: Fundamental Right to Marry**
**U.S. Const. Amend. XIV**
**(42 U.S.C. § 1983)**

72.     Plaintiffs incorporate by reference and reallege all of the preceding paragraphs of this amended complaint as though fully set forth herein.

73.     Plaintiffs state this cause of action against Defendants in their official capacities for purposes of seeking declaratory and injunctive relief.

74.     The Fourteenth Amendment to the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983, bars the Commonwealth, from depriving any person of life, liberty, or property without due process of law (the "Due Process Clause").

75.     The right to marry the unique and irreplaceable person of one's choice and to direct the course of one's life in this intimate realm without undue government restriction is one of the fundamental liberty interests protected by the Due Process Clause.  Indeed, the essence of the fundamental right to marry is freedom of personal choice in selecting one's spouse.

76.     Puerto Rico's Civil Code, 31 L.P.R.A. § 221, and all other sources of Commonwealth law that preclude Banned Couples from marrying or prevent recognition of their marriages on the basis of their member's sexual orientation and/or sex violate the due process guarantee of the Fourteenth Amendment, both facially and as applied to Plaintiffs.  Defendants' actions to enforce the Marriage Ban directly and impermissibly infringe on Plaintiffs' choice of whom to marry, interfering with a core, life-altering, and intimate personal choice.

77.     The Due Process Clause also protects choices central to personal dignity and autonomy, including each individual's rights to family integrity and association.  Defendants' actions to enforce the Marriage Ban directly and impermissibly infringe on Plaintiffs' deeply intimate, personal, and private decisions regarding family life, and preclude them from obtaining full liberty, dignity, and security for themselves and their families.

78.     The duties and actions of Defendant García Padilla, as Governor of the Commonwealth of Puerto Rico; Defendant Rius, as Secretary of the Health Department, and Defendant Llovet; as Director of the General Registry of Vital Statistics, to ensure compliance with Puerto Rico's discriminatory Marriage Ban by, for example, denying same-sex couples marriage licenses, violate Plaintiffs' fundamental right to marry and rights to liberty, dignity,

autonomy, family integrity, association, and due process contained in the Fourteenth Amendment to the United States Constitution.

79.     The duties and actions of Defendant Acosta, as the Director of the Treasury, to ensure compliance with the Commonwealth's discriminatory Marriage Ban by, for example, not allowing same-sex married couples to file joint Puerto Rico income tax returns, violate Plaintiffs' fundamental right to marry and the rights to liberty, dignity, autonomy, family integrity, association, and due process under the Fourteenth Amendment to the United States Constitution.

80.     Defendants cannot satisfy the Due Process Clause's decree that government's denial of a fundamental right or substantial infringement of a liberty interest may be sustained only upon a showing that the burden is narrowly tailored to serve a compelling or even important governmental interest, as the Marriage Ban is not even tailored to any legitimate interest at all.

81.     Thus, Defendants, acting under color of state law, are depriving Plaintiffs of rights secured by the Due Process Clause of the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. § 1983.

## SECOND CLAIM FOR RELIEF

**Deprivation of Equal Protection
on the Basis of Sexual Orientation and/or Sex
U.S. Const. Amend. XIV
(42 U.S.C. § 1983)**

82.     Plaintiffs incorporate by reference and reallege all of the preceding paragraphs of this amended complaint as though fully set forth herein.

83.     Plaintiffs state this cause of action against Defendants in their official capacities for purposes of seeking declaratory and injunctive relief.

84.     The Fourteenth Amendment to the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983, provides that no state shall "deny to any person the equal protection of the laws."  U.S. Const. amend. XIV, § 1.

85.     Puerto Rico's Civil Code, 31 L.P.R.A. § 221, and all other sources of Puerto Rico law that preclude marriage of Banned Couples or prevent recognition of their marriages violate the equal protection guarantee of the Fourteenth Amendment both facially and as applied to Plaintiffs.  The conduct of Defendants in enforcing these laws violates the right of Plaintiffs to equal protection by discriminating impermissibly on the basis of sexual orientation and/or sex.

86.     The duties and actions of Defendants García Padilla, Rius, and Llovet to ensure compliance with Puerto Rico's discriminatory Marriage Ban by, for example, denying LGBT couples marriage licenses, violate the right of Plaintiffs to equal protection guaranteed by the Fourteenth Amendment to the United States Constitution by discriminating impermissibly on the basis of sexual orientation and/or sex.

87.     The duties and actions of Defendant Acosta, as the Director of the Treasury, to ensure compliance with the Commonwealth's discriminatory Marriage Ban by, for example, not allowing LGBT married couples to file joint Puerto Rico income tax returns, violate Plaintiffs' constitutional right to equal protection by discriminating impermissibly on the basis of sexual orientation and/or sex.

88.     In all of the characteristics relevant to marriage, Banned Couples, such as Plaintiff Couples, are identical to Accepted Couples. Banned Couples make the same commitment to one another as those couples permitted to marry.  Banned Couples fall in love, build their lives together, plan their futures together, and hope to grow old together.  Like Accepted Couples, Banned Couples support one another emotionally and financially and take care of one another

physically when faced with injury or illness, as for example Plaintiff Iris Delia Rivera Rivera did for Maritza López Aviles when Maritza had intestinal surgeries in 2007 and 2008.  Plaintiffs seek to marry for the same emotional, romantic, and dignitary reasons, and to provide the same legal shelter to their families as Accepted Couples. The only distinction drawn by the Marriage Ban, and Defendants enforcing it, is the sexual orientation and/or sex of the individuals in the Banned Couples.

### Discrimination Based on Sexual Orientation

89.    The Marriage Ban targets LGBT Puerto Ricans as a class for exclusion from marriage and discriminates against Plaintiffs based on their sexual orientation, both facially and as applied.

90.    The exclusion of Plaintiff Couples and other Banned Couples from marriage based on their sexual orientation subjects Defendants' conduct to strict or at least heightened scrutiny, which Defendants' conduct cannot withstand because the exclusion does not even serve any legitimate governmental interests, let alone any important or compelling interests, nor does it serve any such interests in an adequately tailored manner.

91.    LGBT people have suffered a long and painful history of discrimination in Puerto Rico and across the United States.

92.    Sexual orientation is a core, defining trait that is so fundamental to one's identity and conscience that a person may not legitimately be required to abandon it – even if that were possible – as a condition of obtaining equal treatment by the government.

93.    Sexual orientation generally is fixed at an early age and highly resistant to change through intervention.  No credible evidence supports the notion that interventions are either effective or safe; indeed, they often are harmful and damaging.  No mainstream mental health

professional organization approves interventions that attempt to change sexual orientation, and virtually all of them have adopted policy statements cautioning professionals and the public about such attempts.

94.    Sexual orientation bears no relation to an individual's ability to contribute to society.

95.    LGBT people are a discrete and insular minority, and ongoing prejudice against them continues to curtail the operation of those political processes that might ordinarily be relied upon to protect minorities.  Gay people have fewer civil rights protections at the state and federal level than racial minorities and women had when race- and sex-based classifications were determined to be suspect and quasi-suspect, respectively.

96.    LGBT people lack express statutory protection against discrimination in employment, public accommodations, and housing at the federal level and in more than half the United States, including Puerto Rico; are underrepresented in federal, state, and local democratic bodies; have been stripped of the right to marry through 30 state constitutional amendments and are not currently permitted to marry in most (although a decreasing number of) states; and have been targeted across the nation through the voter initiative processes more than any other group.

97.    The Marriage Ban, which allows for the marriage and recognition of the marriages of Accepted Couples while excluding Banned Couples from marriage and recognition of their marriages, imposes inequality on LGBT people, sends a message of second-class status, and cannot survive either the heightened scrutiny required for such classifications, or less demanding review, because it perpetuates discrimination and stigma.

**Discrimination Based on Sex**

98.     Puerto Rico's Marriage Ban discriminates against Plaintiffs and LGBT members of Puerto Rico Para Tod@s on the basis of sex, both facially and as applied, barring Plaintiffs from marriage, and barring recognition of marriages entered by Banned Couples–such as Plaintiff Couples and members of Puerto Rico Para Tod@s– on the basis of their sex.   The sex-based restriction is plain on the face of Puerto Rico's law, which restricts marriage to a contract "whereby a man and a woman mutually agree to become husband and wife," and prohibits recognition of any marriage contracted in other jurisdictions "between persons of the same sex or transsexuals." 31 L.P.R.A. § 221.

99.     Because of these sex-based classifications, Yolanda Arroyo Pizarro is precluded from marrying the person to whom she is devoted, solely because Yolanda is a woman and not a man; were Yolanda a man, she could marry Zulma Oliveras Vega.  Similarly, José A. Torruellas Iglesias is precluded from having his marriage to Thomas J. Robinson recognized as valid, simply because José is a man and not a woman; were José a woman, José's validly-entered marriage to Thomas would be recognized as such under Puerto Rico law.

100.   The Commonwealth's Marriage Ban serves the impermissible purpose of enforcing and perpetuating sex stereotypes by excluding Plaintiffs and other members of Banned Couples from marriage, and from being recognized as validly married, because they have failed to conform to sex-based stereotypes that men should marry women, and women should marry men. The Marriage Ban also discriminates on the basis of sex by targeting transsexual and/or transgender Puerto Ricans who have married in other jurisdictions and barring their marriages from recognition in Puerto Rico.

101.   Especially given that there are no longer distinctions between the legal duties of spouses in Puerto Rico law, there is no basis for the sex-based eligibility requirements for marriage in Puerto Rico.

102.   The exclusion of Plaintiffs from marriage and marriage recognition based on their sex and upon gender-based stereotypes cannot survive the heightened scrutiny required for sex-based discrimination.

103.   **Discrimination in regard to Parental Status.**  The Marriage Ban impermissibly restricts LGBT parents from establishing parental status, for example through the parental presumption afforded when a child is born into a marriage, on the bases of their parents' sex, sexual orientation, and marital status, denying such parents and their children the dignity, legitimacy, security, support, and protections available when parents can marry.   The Commonwealth's differential treatment of families and children based upon their parents' sex, sexual orientation, and marital status cannot survive the heightened scrutiny required for classifications based on parental status.

104.   **Discrimination With Respect to Fundamental Rights and Liberty Interests Secured by the Due Process Clause.**  The Marriage Ban discriminates against Plaintiffs based on sexual orientation and/or sex with respect to the fundamental right to marry and with respect to their liberty interests in dignity, autonomy, and family integrity and association.   Differential treatment with respect to the exercise of fundamental rights and liberty interests, based on Plaintiffs' sexual orientation and/or sex, subjects Defendants' conduct to strict or at least heightened scrutiny, which Defendants' conduct cannot withstand.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment as follows:

A.     Declaring that the provisions and enforcement by Defendants of Article 68 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 221, and any other sources of Puerto Rico law or regulation that exclude LGBT couples from marriage or bar recognition of valid marriages of LGBT people entered into in another jurisdiction violate Plaintiffs' rights under the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment to the United States Constitution;

B.     Enjoining enforcement by Defendants of Article 68 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 221, and any other sources of Puerto Rico law or regulation that exclude LGBT couples from marriage or bar recognition of valid marriages of LGBT people entered in other jurisdictions;

D.     Requiring Defendants, in their official capacities, to allow Banned Couples to marry on the same terms as Accepted Couples and to recognize the valid marriages of LGBT people entered into in other jurisdictions on the same legal terms as other marriages recognized in Puerto Rico;

E.     Awarding Plaintiffs their costs, expenses, and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and other applicable laws; and

F.     Granting such other and further relief as the Court deems just and proper.

G.     The declaratory and injunctive relief requested in this action is sought against each Defendant; each Defendant's officers, employees, and agents; and against all persons acting in cooperation with any Defendant or under a Defendant's supervision, direction, or control.

Dated: _ June 25, 2014

       By: s/ _ *Ada Mercedes Conde Vidal*

       Ada Mercedes Conde Vidal
       P.O. Box 13268
       San Juan, PR 00908-3268
       T: (787) 721-0401 | F: (787) 977-8072
       condelawpr@gmail.com
       USDCPR 206209

       *Attorney for Plaintiffs* ADA MERCEDES CONDE VIDAL and
       IVONNE ÁLVAREZ VÉLEZ

       By:

       Hayley Gorenberg*
       Omar Gonzalez-Pagan*
       Jael Humphrey-Skomer*
       LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.
       120 Wall Street, 19th Floor
       New York, NY 10005
       T: (212) 809-8585 | F: (212) 809-0055
       hgorenberg@lambdalegal.org
       ogonzalez-pagan@lambdalegal.org
       jhumphrey@lambdalegal.org

       Gary W. Kubek*
       Harriet M. Antczak*
       Jing Kang*
       DEBEVOISE & PLIMPTON LLP
       919 Third Avenue
       New York, NY 10022
       T: (212) 909-6000 | F: (212) 909-6836
       gwkubek@debevoise.com
       hmantcza@debevoise.com
       jkang@debevoise.com

       Ryan M. Kusmin*
       DEBEVOISE & PLIMPTON LLP
       555 13th Street N.W.
       Washington, DC 20004
       T: (202) 383-8000 | F: (202) 383-8118
       rmkusmin@debevoise.com

       Celina Romany-Siaca
       Celina Romany Law Offices
       268 Munoz Rivera Avenue, Suite 1500
       San Juan, PR 00918
       T: (787) 754-9304 | F: (787) 754-9324
       bufetecelinaromany@gmail.com

USDCPR 121811

*Attorneys for Plaintiffs* MARITZA LÓPEZ AVILES and IRIS DELIA RIVERA RIVERA; JOSÉ A. TORRUELLAS IGLESIAS and THOMAS J. ROBINSON; ZULMA OLIVERAS VEGA and YOLANDA ARROYO PIZARRO; JOHANNE VÉLEZ GARCÍA and FAVIOLA MELÉNDEZ RODRÍGUEZ; and PUERTO RICO PARA TOD@S

*\* Motions for admission pro hac vice submitted separately*