## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **ADA M. CONDE-VIDAL, et al.**<br><br>**Plaintiffs**<br><br>**v.**<br><br>**DR. ANA RIUS-ARMENDARIZ, et al.**<br><br>**Defendants** | **CIVIL NO. 14-1253 (PG)** |

## MOTION TO DISMISS
## PURSUANT TO FED.R.CIV.P. 12(B)(6)

**TO THE HONORABLE COURT:**

**COMES NOW**, defendant Hon. Alejandro García Padilla, Ana Rius Armendariz, Melba Acosta Febo, and Wanda Llovet Díaz, in their official capacities (hereinafter collectively "Defendants"), without submitting to this Honorable Court's jurisdiction, and through the undersigned attorney, respectfully allege and pray as follows:

### I. INTRODUCTION

Plaintiffs, five individual same-sex couples and the organization Puerto Rico Para Tod@s have filed suit against Alejandro García Padilla, Governor of Puerto Rico, Ana Rius Armendariz, Secretary of Health, Wanda Llovet Díaz, Director of the Registry of Vital Statistics of the Commonwealth and Melba Acosta, Secretary of the Treasury Department

1

seeking a declaration that Defendants' enforcement of the Puerto Rico same-sex marriage ban (Article 68 of the Civil Code) violates the United States Constitution.  In essence, plaintiffs challenge the constitutionality of Article 68 of the Puerto Rico Civil Code, which defines marriage as that between a man and a woman and does not recognize same-sex or transsexual marriages from other jurisdictions. 31 L.P.R.A. § 221. Plaintiffs claim that pursuant to the U.S. Supreme Court case of U.S. v. Windsor, 133 S. Ct. 2675 (2013), Puerto Rico's ban on same sex marriages and Defendants' failure to recognize marriages from other jurisdiction is unconstitutional pursuant to the Due Process and Equal Protection Clause. Also, plaintiffs request for the recognition of marriages from other jurisdictions implicates a challenge pursuant to the Full Faith and Credit clause. Dkt. 7, p.32.

More specifically, plaintiffs challenge "Defendants' discriminatory denial, pursuant to Puerto Rico's laws, of the freedom of the unmarried Plaintiff Couples and the unmarried LGBT members of Puerto Rico Para Todo@s to marry in the Commonwealth; and the discriminatory refusal to recognize marriages lawfully entered into in other jurisdictions by Plaintiff Couples and married LGBT people who are members of Puerto Rico Para Tod@s." Dkt. 7, p. 2.

Accordingly, plaintiffs seek from the Court, a declaration that (1) the provisions and enforcement by Defendants of Article 68 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 221, and any other sources of Puerto Rico law or regulation that exclude LGBT couples from

marriage, or bar recognition of valid marriages of LGBT people entered into in other jurisdiction, violate Plaintiffs' right under the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; (2) enjoining enforcement by Defendants of Article 68 of the Civil Code of Puerto Rico and any other sources of Puerto Rico law or regulation that exclude LGBT couples from marriage or bar recognition of valid marriages of LGBT people entered in other jurisdictions and (3) requiring Defendants, in their official capacities, to allow Banned Couples to marry on the same terms as Accepted Couples and to recognize the valid marriages of LGBT people entered into in other jurisdictions on the same legal terms as other marriages recognized in Puerto Rico. Dkt. 7, p. 32.

Nonetheless, Defendants affirm that principles of federalism and the current state of law recognize that the prerogative to regulate family affairs and the institution of marriage is within the inherent providence of the Legislature and that in a valid exercise of that prerogative the Puerto Rico Legislature has defined the institution of marriage as that between a man and a woman. Thus, Article 68 of the Civil Code is presumed valid and constitutional.

The regulation of family matters and the institution of marriage have been historically delegated to the states. Additionally, principles of federalism and comity require federal courts to abstain from deciding cases "whose adjudication in a federal

forum 'would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 361 109 S. Ct. 2506, 105 L.Ed. 2d 298 (1989) ("*NOPSI*").

More so, plaintiffs have failed to articulate concrete facts whereby this Court can ascertain if indeed Article 68 has been applied to any of the plaintiffs. For example, the complaint fails to address whether or not any of the plaintiffs have in fact requested any affirmative action by any of the Defendants and that such request has been denied by any of the Defendants. This lack of factual allegations puts the Court in a position of rendering an advisory opinion or decree, which is barred by Article III case and controversy considerations.

Finally, current applicable case law stands for the position that state bans on same sex marriage do not violate the Equal Protection Clause or the Due Process Clause of the Fourteenth Amendment. Baker v. Nelson, 409 U.S. 810 (1972). Likewise, the United States Supreme Court has recognized a public policy exception to the Full Faith and Credit clause and thus plaintiffs' claim regarding this matter also fails. Pursuant to the above, and the reasons that will more readily be discussed below, the appearing Defendants respectfully understand that the instant complaint must be dismissed.

## II. STANDARD FOR DISMISSAL

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to assert the defense of

4

failure to state a claim upon which relief can be granted, before pleading, if a responsive pleading is allowed. Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See* Brown v. Hot, Sexy and Safer Products, Inc., 68 F.3d 252, 530 (1st Cir. 1995). The Court accepts all well pleaded-factual allegations as true, and indulges all reasonable inferences in Plaintiff's favor. *See* Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). The Court need not credit, however, "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" when evaluating the Complaint's allegations. *See* Aulson v. Blanchard, 83 F3d 1, 3 (1st Cir. 1996). When opposing a Rule 12(b)(6) motion, "a plaintiff cannot expect a trial court to do his homework for him." *See* McCoy v. Massachusetts Institute of Technology, 950 F2d 13, 22 (1st Cir. 1991). Plaintiffs are responsible for putting their best foot forward in an effort to present a legal theory that will support their claim. *Id.,* at 23. Plaintiff must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under actionable theory." *See* Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir 1988). A complaint is properly dismissed for failure to state a claim "only if the facts lend themselves to no viable theories of recovery." *See* Luc v. Wyndham Management Corp., 496 F3d 85, 88 (1st Cir. 2007).

　　In cases requesting declaratory judgments such as this one, the Declaratory

Judgment Act of 1934, now 28 U.S.C. § 2201, styled "creation of a remedy," provides that in a case of actual controversy a competent court may "declare the rights and other legal relations" of a party "whether or not further relief is or could be sought." This is an enabling Act, which confers discretion on the courts rather than an absolute right upon the litigant. Pub. Serv. Comm'n of Utah v. Wycoff Co., Inc., 344 U.S. 237, 241, 73 S. Ct. 236, 239, 97 L. Ed. 291 (1952). The act provides in part:

> In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such. 28 U.S.C. § 2201(a) (emphasis added).

The preemptive and contingent nature of declaratory judgment actions spawns heightened demand for careful judicial attention to the constitutional limitations to federal jurisdiction under Article III, as well as to derivative prudential doctrines, such as ripeness. *See* Wycoff, 344 U.S. at 241–43, 73 S.Ct. at 239–40, 97 L.Ed. at 294–96; Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826, 828–29 (1941); Wickland Oil Terminals v. Asarco, Inc., 792 F.2d 887, 893 (9th Cir.1986). Guarding against the institutional dangers of treading too far into these troubled waters, Congress provided that courts need only issue declaratory judgments in their discretion. *See* Wycoff, 344 U.S. at 241, 73 S.Ct. at 239, 97 L.Ed. at 294–95; Brillhart v. Excess Insurance Co., 316 U.S. 491, 494, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620, 1625 (1942), *reh'g denied*, 317 U.S. 704, 63 S.Ct. 23, 87 L.Ed.

562 (1942). Declaratory proceedings in the federal courts against state officials must be decided with regard for the implications of our federal system.

To survive a Rule 12(b)(6) motion to dismiss, Plaintiffs' "well-pleaded facts must possess enough heft to show that they are entitled to relief." Clark v. Boscher, 514 F.3d 107, 112 (1st Cir.2008). In evaluating whether Plaintiffs are entitled to relief, the court must accept as true all "well-pleaded facts [and indulge] all reasonable inferences" in plaintiffs' favor." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The First Circuit has held that "dismissal for failure to state a claim is appropriate if the complaint fails to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F.3d 301, 305(1st Cir.2008).

Moreover, Rule 12(b)(1) is the appropriate vessel for challenging a court's subject-matter jurisdiction. Valentín v. Hospital Bella Vista, 254 F.3d 358, 362–63 (1st Cir.2001). When faced with a jurisdictional challenge courts must credit the plaintiffs' well-pleaded factual averments and indulge every reasonable inference in the pleader's favor. Merlonghi v. United States, 620 F.3d 50, 54 (1st Cir.2010) (citing *Valentín*, 254 F.3d at 363). Nonetheless, it is beyond dispute that a plaintiff faced with a subject-matter jurisdiction challenge has the burden to demonstrate its existence. Johansen v. United States, 506 F.3d 65, 68 (1st Cir.2007) (citations omitted).

The Supreme Court recently clarified the law with respect to a plaintiff's pleading requirement in order to survive a Rule 12(b)(6) motion. A complaint must contain factual allegations sufficient to "raise a right to relief above the speculative level." *See,* Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007). While a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' **requires more than labels and conclusions**, and a formulaic recitation of the elements of a cause of action will not do." *Id.,* at 1964-65. The Supreme Court further explained that the "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true". Id., at 1965. Subsequently, the Supreme Court reiterated that "[s]pecific facts are not necessary; the statements need only 'give the defendants fair notice of what the ... claim is and the grounds upon which it rests.' " Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (*quoting* Twombly, 127 S.Ct. at 1964). In so doing, the court accepts as true all well-pleaded facts and draws all reasonable inferences in the plaintiff's favor. Parker v. Hurley, 514 F.3d 87, 90 (1st Cir. 2008).

In Twombly, the Supreme Court announced the "plausibility" pleading standard. In so doing, the Court expressly overruled the oft-quoted very forgiving pleading mantra from its 1957 decision in Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)(namely, that no complaint should be dismissed for failing to properly state a claim

"unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.") The <u>Conley</u> language, wrote the Court, "earned its retirement" because it might, incorrectly, preserve a conclusorily pleaded claim on the mere theoretical chance that it might later find support. <u>Twombly</u>, 550 U.S. at 562-63, 127 S.Ct at 1969, 167 L.Ed.2d 929; <u>Moss v. U.S. Secret Serv.</u>, 572 F.3d 962, 968 (9th Cir. 2009)(<u>Conley</u>, "read literally, set the bar too low").

Under <u>Twombly</u>, the factual allegations which are assumed to be true must do more than create speculation or suspicion of a legally cognizable cause of action; they must demonstrate the plausibility of entitlement to relief. <u>Twombly</u>, 550 U.S. at 555, 557. *Accord*, <u>Sanchéz v. Pereira-Castillo</u>, 590 F.3d 31, 41 (1st Cir. 2009); and <u>MVM Inc. v. Rodríguez</u>, 568 F. Supp. 2d 158, 167 (D.P.R. 2008). The Supreme Court further observed in <u>Twombly</u> that Federal Rule of Civil Procedure 8(a)(2) does require a "showing" that a plaintiff is entitled to relief and that this substantive threshold is not achieved by "blanket assertion[s]." 550 U.S. at 556, n. 3.

However, "the tenet that a court must accept as true all of the allegations contained in a complaint **is inapplicable to legal conclusions.**" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 129 S.Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, **supported by mere conclusory statements**, do not suffice." <u>Id</u>. (*citing* <u>Twombly</u>, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged –but it has not 'show[n]'– 'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1950 (*quoting* Fed.R.Civ.P. 8(a)(2)).

To make this determination, the court employs a two-pronged approach. *See,* Ocasio–Hernández v. Fortuño–Burset, 640 F.3d 1, 10-11(1st Cir. 2011). The court first screens the complaint for statements that "merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." *Id.* (citations, internal quotation marks and alterations omitted). A claim consisting of little more than "allegations that merely parrot the elements of the cause of action" may be dismissed. Ocasio–Hernández, 2011 WL 1228768 at *9. The second part of the test requires the court to credit as true all non-conclusory factual allegations and the reasonable inferences drawn from those allegations, and then to determine if the claim is plausible. *Id.* The plausibility requirement "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of illegal conduct. Twombly, 550 U.S. at 556. The "make-or-break standard" is that those allegations and inferences, taken as true, "must state a plausible, not a merely conceivable, case for relief." Sepúlveda– Villarini v. Dep't of Educ., 628 F.3d 25, 29 (1st Cir. 2010); *see* Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." (citations and footnote omitted)).

Evaluating the plausibility of a claim is a "context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S.Ct. at 1950. In doing so, the court may not disregard properly pleaded factual allegations or "attempt to forecast a plaintiff's likelihood of success on the merits." Ocasio–Hernández, 640 F.3d 1 (1st Cir. 2011), 2011 WL 1228768 at *9. "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." Id.

Pleaders must therefore allege sufficient facts to move beyond the level of speculation, to "nudge[] their claims across the line from conceivable to plausible. Twombly, 550 U.S. at 570, 127 S.Ct at 1974. To cross into "the realm of plausible liability", the allegations must be factual (**not conclusory**) and suggestive (not neutral). Id. at 557 n.5, 127 S.Ct. at 1966 n.5. This "plausibility" line, however, does not require that the claims appear "likely" or "probably" true. Id. Yet, it will bar claims resting on a mere "thread-bare" recital of elements, naked legal conclusions, and "unadorned, the-defendant-unlawfully-harmed-me" accusations.

### III.    STANDING CONSIDERATIONS

"Article III of United States Constitution limits the 'judicial power' of the United States to the resolution of 'cases' and 'controversies.'" Valley Forge Christian Coll v. Ams. United for Separation of Church & State, 454 U.S. 464, 471 (1982). A crucial part of the case and controversy limitation on the power of the federal courts is the requirement that a

plaintiff must have standing to invoke federal jurisdiction. Id. At 471-73. "Standing is a threshold issue" and determines "whether the court has the power to hear the case, and whether the putative plaintiff is entitled to have the court decide the merits of the case." Libertad v. Welch, 53 F. 3d 428, 436 (1st Cir. 1995) (internal quotations omitted). Therefore, if plaintiff lacks standing to bring a matter to federal court, the court lacks jurisdiction to decide the merits of the case and must dismiss the complaint. United States v. AVX Corp., 962 F. 2d 108, 113 (1st Cir. 1992).

The Article III standing requirement assures that there is a real need to exercise the power of judicial review in order to protect the interests of the complaining party; where that need does not exist; allowing courts to oversee legislative or executive action would significantly alter the allocation of power away from a democratic form of government. Summers v. Earth Island Institute, 129 S. Ct. 1142, 173 L. Ed. 2d 1, 72 Fed. R. Serv. 3d 1183 (2009).

Moreover, a person whose rights are affected by one portion of a statute may not question the constitutionality of another portion, where the operation of the provision affecting him or her will not be influenced by the validity or invalidity of the contested provision. In re Dos Cabezas Power Dist., 17 Ariz. App. 414, 498 P.2d 488 (Div. 2 1972). See United States v. Salerno, 481 U.S. 739, 745 & n. 3, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) (constitutional jurisprudence instructs that usually person to whom statute properly

applies will not be heard to challenge statute on grounds that it conceivably may be unconstitutional as applied to others).

To establish Article III standing, plaintiffs must show that they have a "personal stake in the outcome" of the claim by meeting a three part test. Pagan v. Calderon, 448 F. 3d 16, 27 (1st Cir. 2006) (citing Baker v. Carr, 369 U.S. 186, 204 (1962)). (internal citations omitted). Id. They must show (1) "a concrete and particularized injury in fact, (2) a causal connection that permits tracing the claimed injury to defendants actions, and (3) a likelihood that prevailing in the action will afford some redress for the injury." Weavers Cover Energy, LLC v. R.I. Coastal Res. Mgmt. Council, 589 F. 3d 458, 467 (1st Cir. 2009). (internal quotation marks omitted).

The Supreme Court has held that the party invoking federal jurisdiction bears the burden of establishing these elements. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (internal citations omitted). "Since they are not mere pleading requirements but rather an indispensible part of the plaintiffs case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of litigation." Id. (internal citations omitted).

In the case at bar, none of the plaintiffs have standing to challenge the statute as applied to them because they have failed to articulate any factual allegations to the effect

that they have suffered a concrete and particularized injury in fact that can be causally connected to any of the defendants. Unmarried plaintiffs have failed to assert that any of them attempted to obtain a marriage license but their request was denied. Likewise, married plaintiffs have not asserted that they applied for and were denied the recognition of marriages from other jurisdictions. In fact there are no allegations pointing to any particularized action by any of the named defendants. Accordingly, there is no causal connection tracing the claimed injury to defendants and plaintiff's complaint should be dismissed on standing grounds.

## IV. THE STATE PUBLIC POLICY CONCERNS INHERENT IN THE REGULATION OF MARRIAGE DEMAND A BURFORD ABSTENTION

The *Burford* abstention doctrine provides that "[c]ourts should abstain from deciding cases presenting 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar,' *or* whose adjudication in a federal forum 'would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.' " New Orleans Pub. Serv., Inc. v. Council of New Orleans, *supra*. If either one of these two prongs is met, the Court should abstain from exercising jurisdiction in the case. Under the second ground for abstention in Burford, this Court should abstain from exercising jurisdiction in this case if the case's "adjudication in a federal forum 'would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" First Penn-Pac.

Life Ins. Co. v. Evans, 313 F. App'x 633 (4th Cir. 2009); Burford v. Sun Oil Co., 319 U.S. 315, 63 S. Ct. 1098, 87 L. Ed. 1424 (1943).

Applicable Supreme Court and First Circuit case law recognizes that the definition of marriage is a matter of substantial public concern and thus this Court should allow the Commonwealth to implement a coherent policy on the matter. Baker v. Nelson, 409 U.S. 810 (1972).

## V. FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED UNDER 42 U.S.C. §1983.

Plaintiffs' claim against the Defendants should be dismissed for failing to state a claim under which relief can be granted. The substantive cause of action to claim damages and injunctive relief against individuals and governmental bodies who deprive a plaintiff of rights, privileges or immunities "secured by the Constitution and laws" arises from § 1983. In order to state a valid claim under 42 U.S.C. § 1983, three elements must be alleged before it becomes cognizable.   A §1983 plaintiff must allege and prove the following elements:

(1) that the conduct complained of was committed by a person acting "under color of state law."   *See*   Gómez v. Toledo, 446 U.S. 635, 640 (1980); (2) that this conduct "deprived plaintiff[s'] of rights, privileges or immunities secured by the Constitution or laws of the United States."   Hudson v. Palmer, 468 U.S. 517 (1984); Parratt v. Taylor, 451 U.S. 527, 535 (1981); overruled in part on other grounds; Daniels v. Williams, 474 U.S. 327,

15

330-331 (1986); <u>Voutour v. Vitale</u>, 761 F. 2d 812, 819 (1ˢᵗ Cir. 1985); and (3) that defendant was personally and directly involved in causing the violation of the plaintiff[s'] federally protected rights.   <u>Rizzo v. Goode</u>, 423 U.S. 362, 370, 96 S.Ct. 598, 46 L.Ed. 2d 561 (1976); <u>Monell v. New York Dept. of Social Services</u>, 436 U.S. 658, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978).

As will be discussed forthwith, plaintiffs have failed to adequately comply with the §1983 standard given that both the Fourteenth Amendment Due Process clause and Equal Protection claim fail as a matter of law.

## VI. PLAINTIFFS' FOURTEENTH AMENDMENT CLAIM FAILS

The Equal Protection Clause requires states to treat alike all persons similarly situated. <u>Plyer v. Doe</u>, 457 U.S. 202, 216, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982). Unless state action burdens a suspect class or impinges upon a fundamental right, equal protection is reviewed for a rational relationship between the disparity of treatment and a legitimate government purpose. <u>Heller v. Doe</u>, 509 U.S. 312, 319, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993). In order to state a claim for discrimination that violates equal protection, Plaintiffs must allege that they were intentionally treated differently from others similarly situated and there was no rational basis for the difference in treatment. <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000)(per curiam).

The current state of law for the First Circuit recognizes that states have the

16

prerogative to define family matters including marriage as they choose. In <u>Baker v. Nelson</u>, 291 Minn. 310, 191 N.W.2d 185, 1971, the Minnesota Supreme Court ruled that a state law limiting marriage to persons of the opposite sex did not violate the U.S. Constitution. It held that "the equal protection clause of the Fourteenth Amendment … is not offended by a state's classification of persons authorized to marry. There is no irrational or invidious discrimination. <u>Id.</u>, at 187. The Minnesota Supreme Court's ruling in that case holds by virtue of the U.S. Supreme Court's dismissal,[1] for want of a substantial federal question, of an appeal from the judgment of the Minnesota Supreme Court. Such a dismissal constitutes a disposition on the merits. <u>Hicks v. Miranda</u>, 422 U.S. 332, 344 (1975).

The First Circuit has stated that <u>Baker</u> "is binding on us unless repudiated by subsequent Supreme Court precedent." <u>Massachusetts v. U.S. Dept. of Health and Human Services</u>, 682 F.3d 1, 8 (1st Cir. 2012). To this date, <u>Baker</u> has not been repudiated by the U.S. Supreme Court.

Indeed, <u>U.S. v. Windsor</u>, -- U.S. –, 133 S.Ct. 2675, 186 L.Ed.2d 808 (2013), did not address <u>Baker</u>. Therefore, in accordance with <u>Baker</u>, Article 68 of the Puerto Rico Civil Code, in limiting marriage to persons of the opposite sex does not violate the U.S. Constitution.

In <u>Baker</u>, the Minnesota Supreme Court also stated:

"These constitutional challenges have in common the assertion that

---

1 *See* <u>Baker v. Nelson</u>, 409 U.S. 810 (1972).

the right to marry without regard to the sex of the parties is a fundamental right of all persons and that restricting marriage to only couples of the opposite sex is irrational and invidiously discriminatory. We are not independently persuaded by these contentions and do not find support for them in any decisions of the United States Supreme Court.

…

**The equal protection clause of the Fourteenth Amendment, like the due process clause, is not offended by the state's classification of persons authorized to marry.** There is no irrational or invidious discrimination. Petitioners note that the state does not impose upon heterosexual married couples a condition that they have a proved capacity or declared willingness to procreate, posing a rhetorical demand that this court must read such condition into the statute if same-sex marriages are to be prohibited. Even assuming that such a condition would be neither unrealistic nor offensive under the Griswold rationale, the classification is no more than theoretically imperfect. We are reminded, however, that 'abstract symmetry' is not demanded by the Fourteenth Amendment." [Emphasis added].

The Minnesota Supreme Court in <u>Baker</u> is clear and holds by virtue of the U.S. Supreme Court's dismissal, for lack of a substantial federal question, of the appeal from the Minnesota Supreme Court's judgment. Neither the equal protection clause nor the due process clauses are offended by statutes limiting the right to marry to a man and a woman.

**A. Puerto Rico Marriage Laws satisfy the Rational-Basis Test.**

A law survives rational basis review so long as the law is rationally related to a legitimate governmental interest. <u>Nordlinger v. Hahn</u>, 505 U.S. 1, 11-12, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992). Rational basis review does not permit consideration of the strength of the individual's interest or the extent of the intrusion on that interest caused by the law; the

focus is entirely on the rationality of the state's reason for enacting the law. Cook v. Gates, 528 F.3d 42, 55 (2008). *See* Heller v. Doe, 509 U.S. 312, 324, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993)(a law "fails rational-basis review" only when it "rests on grounds wholly irrelevant to the achievement of the State's objective" or the State's objectives are themselves invalid).

The First Circuit in Cook, 528 F.3d at 61-62, joined other sister circuits in not recognizing homosexuals as a suspect class for equal protection purposes. Furthermore, the First Circuit added that the district court was correct to reject the plaintiffs' equal protection claim because homosexuals are not a suspect class and the legitimate interests Congress put forward are rationally served by the Act. Therefore, the district court was correct to analyze the plaintiffs' equal protection claim under the rational basis standard.

Article 68 of the Puerto Rico Civil Code, 31 L.P.R.A. §221, reads as follows:

> "Marriage is an institution, originating in a civil contract whereby a man and a woman mutually agree to become husband and wife and to discharge toward each other the duties imposed by law. It is valid only when contracted and solemnized in accordance with the provisions of law, and it may be dissolved before the death of either spouse only in the cases expressly provided for in this title. Any marriage between persons of the same sex or transsexuals contracted in other jurisdictions shall not be valid or given juridical recognition in Puerto Rico."

The power to regulate the institution of marriage, its constitution, and dissolution are matters within the province of the Legislative Assembly-since they concern political and public interest. Ortiz Ortiz v. Saez Ortiz, 90 P.P.R. 815 (1964).

The Puerto Rico Legislature, in enacting the 1999 amendment to Article 68,

expressed in its Statement of Motives: "In spite of the drastic changes our society has

undergone, the family continues to be the cornerstone that upholds it. Although these

social changes have affected the family, this institution still retains a strong public interest.

The institution of marriage, being a basic component of the family unit, is still of great

public interest and therefore the regulations as to how it must be celebrated, conducted and

dissolved corresponds to the Legislature."

The decision of the U.S. Supreme Court in <u>Baker</u>, 409 U.S. 810 (1972), which

mandates that a state law limiting marriage to opposite-sex couples does not violate the

Equal Protection Clause is binding to this Court, and compels the conclusion that Plaintiffs'

equal protection claims cannot succeed.

Under rational-basis, a law is presumed constitutional, and "[t]he burden is on the

one attacking the legislative arrangement to negate every conceivable basis which might

support it." <u>Heller v. Doe</u>, 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993). A court

conducting a rational-basis review does not sit "as a super legislature to judge the wisdom

or desirability of legislative policy determinations" but asks only whether there is some

conceivable rational basis for the challenged statute. <u>Heller</u>, 509 U.S. at 319. Under rational-

basis review, it is "constitutionally irrelevant [what] reasoning in fact underlays the

legislative decision." <u>R.R. Ret.Bd. v. Fritz</u>, 449 U.S. 166, 179 (1980)(quoting <u>Flemming v.</u>

<u>Nestor</u>, 363 U.S. 603, 612 (1960)). Lastly, the Commonwealth of Puerto Rico "has no

obligation to produce evidence to sustain the rationality of its action; its choice is presumptively valid and 'may be based on rational speculation unsupported by evidence or empirical data.'" FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 315 (1993).

Article 68 of the Puerto Rico Civil Code has a rational basis in law and thus does not violate equal protection. Therefore it is presumed valid. Plaintiffs' request for relief undoubtedly challenges the constitutionality of a valid exercise of the Legislature's inherent authority to legislate family matters including marriage. Current case law and principles of federalism have recognized the states' prerogative to legislate in these areas.

The U.S. Supreme Court in Windsor acknowledged that "[t]he recognition of civil marriages is central to state domestic relations law applicable to its residents and citizens. 133 S.Ct, at 2691 ( citing Williams v. North Carolina, 317 U.S. 287, 298, 63 S.Ct. 207, 87 L.Ed. 279 (1942) ("Each state as a sovereign has a rightful and legitimate concern in the marital status of persons domiciled within its borders")). The Court went on to recognize that

> [t]he definition of marriage is the foundation of the State's broader authority to regulate the subject of domestic relations with respect to the protection of offspring, property interests, and the enforcement of marital responsibilities. The states, at the time of the adoption of the Constitution, possessed full power over the subject of marriage and divorce and the Constitution delegated no authority to the Government of the United States on the subject of marriage and divorce.

Id. (Citations omitted).

As a result of this distribution of authority, the federal government has historically

deferred decisions with respect to domestic relations to state-law public policy. *See* id.

Moreover, it is presumed that a legislature has acted within its constitutional powers. Clements v. Fashing, 457 U.S. 957, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982). Thus, a statute, or a regularly enacted legislative act, is presumed to be valid and constitutional. Parham v. Hughes, 441 U.S. 347, 99 S.Ct. 1742, 60 L.Ed.2d 269 (1979). The same presumption applies with respect to decisions or orders of an administrative body or officer exercising powers pursuant to statutory authority. U.S. v. Rock Royal Co-op., 307 U.S. 533, 59 S.Ct. 993, 83 L.Ed.2d 1446 (1939).

For all of the above discussed, plaintiffs' Fourteenth Amendment claims fail. Therefore, it is respectfully requested that the Honorable Court DISMISSES WITH PREJUDICE said claim.

## VII. PLAINTIFFS ARE NOT ENTITLED TO THE APPLICATION OF THE FULL FAITH AND CREDIT CLAUSE

Article IV of the Constitution of the United States, §1, provides in part that "Full Faith and credit shall be given in each state in the public acts, records, and judicial proceeding of every other state." Nonetheless, the U.S. Supreme Court found that "the Full Faith and Credit Clause does not require a State to apply another State's law in violation of its own legitimate public policy." Franchise Tax Bd. of California v. Hyatt, 538 U.S. 488, 497, 123 S.Ct. 1683, 155 L.Ed.2d 702 (2003); Nevada v. Hall, 440 U.S. 410, 424, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979)(quoting Alaska Packers Assn. v. Industrial Accident Comm'n, 294 U.S.

22

532, 55 S.Ct. 518, 79 L.Ed. 1044 (1935).

Given the fact that the out of state same sex marriages that plaintiffs seek the Court to validate in the Commonwealth of Puerto Rico, through the full faith and credit clause, are contrary to the Commonwealth of Puerto Rico's public policy, the full faith and credit clause does not apply in this case. Therefore, the instant claim must be DISMISSED WITH PREJUDICE.

## VIII. CONCLUSION

Being that the plaintiffs have failed to establish that they are entitled to the relief raised through the instant complaint, the appearing Defendants respectfully request the Honorable Court to DISMISS WITH PREJUDICE the instant complaint.

**I HEREBY CERTIFY** that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send an electronic copy to all attorneys to their address of record.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 27th day of August 2014.

**CESAR MIRANDA RODRIGUEZ**
Secretary of Justice

**MARTA ELISA GONZALEZ Y.**
Deputy Secretary
In Charge of Civil Matters

**JANITZA M. GARCIA MARRERO**

23

U.S.D.C.-P.R. Bar No. 222603
Federal Litigation Division
jgarcia@justicia.pr.gov


*S/ Idza Diaz Rivera*
**IDZA DIAZ RIVERA**
U.S.D.C. NO. 223404
Federal Litigation Division
Department of Justice
P.O. Box 9020192
San Juan, P.R., 00902-0192.
Tel. (787) 721-2900, Ext. 2606
Fax (787) 723-9188
idiaz@justicia.pr.gov


*S/ Maraliz Vazquez Marrero*
**MARALIZ VAZQUEZ MARRERO**
U.S.D.C. NO. 225504
Federal Litigation Division
Department of Justice
P.O. Box 9020192
San Juan, P.R., 00902-0192.
Tel. (787) 721-2900, Ext. 2606
Fax (787) 723-9188
marvazquez@justicia.pr.gov