UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

ADA CONDE-VIDAL, ET AL.,

    Plaintiffs,

     v.

ALEJANDRO GARCIA-PADILLA, ET AL.

    Defendants.

Civil No. 14-1253 (PG)

## OPINION AND ORDER

Article 68 of the Puerto Rico Civil Code defines marriage as "originating in a civil contract whereby a man and woman mutually agree to become husband and wife" and it refuses recognition of "[a]ny marriage between persons of the same sex or transsexuals contracted in other jurisdictions." P.R. LAWS ANN. tit. 31, § 221. This case challenges the constitutionality of Puerto Rico's codification of opposite-gender marriage.

### I.   BACKGROUND

***The plaintiffs' case.*** The plaintiffs include three same-gender couples who live in Puerto Rico and are validly married under the law of another state; two same-gender couples who seek the right to marry in Puerto Rico; and Puerto Rico Para Todos, a Lesbian, Gay, Bisexual, Transvestite, and Transsexual (LGBTT) nonprofit advocacy organization.

As the plaintiffs see it, the liberty guaranteed by the Constitution includes a fundamental right to freely choose one's spouse and Article 68 of the Puerto Rico Civil Code unlawfully circumscribes this fundamental right and violates Equal Protection and Due Process. Because the Equal Protection Clause prohibits discrimination on the basis of sexual orientation and gender, Puerto

Rico would no more be permitted to deny access to marriage than it would be to permit, say, racial discrimination in public employment. And because the substantive component of the Due Process Clause protects fundamental rights from government intrusion, including issues of personal and marital privacy, see, e.g., Lawrence v. Texas, 539 U.S. 558 (2003), the Commonwealth must articulate a compelling governmental interest that justifies its marriage laws — a burden that, according to the plaintiffs, simply cannot be met.    The plaintiffs contend that recent developments at the Supreme Court, United States v. Windsor, 570 U.S. ___, 133 S.Ct. 2675 (2013), endorse their understanding of Equal Protection and Due Process.    By recognizing only opposite-gender marriage, Commonwealth law deprives gay and lesbian couples of the intrinsic societal value and individual dignity attached to the term "marriage".

   ***The Commonwealth's case***.   Article 68 stands as a valid exercise of the Commonwealth's regulatory power over domestic relations. Because the federal Constitution is silent on the issue of marriage, Puerto Rico is free to formulate its own policy governing marriage. See Rodriguez v. Popular Democratic Party, 457 U.S. 1, 8 (1982)("Puerto Rico, like a state, is an autonomous political entity 'sovereign over matters not ruled by the Constitution.'")(citation omitted).

   As Puerto Rico sees it, the Supreme Court has said as much: in Baker v. Nelson, 409 U.S. 810 (1972), the Supreme Court held that it lacked jurisdiction over a constitutional challenge to Minnesota's marriage laws.    The ancient understanding and traditional doctrine of

marriage and family life expressed by Article 68 offends neither Equal Protection nor Due Process.

The plaintiffs seek a declaratory judgment invalidating Article 68. (Docket No. 7.)  Puerto Rico moved to dismiss. (Docket No. 31.) The plaintiffs responded. (Docket No. 45.)  Puerto Rico replied. (Docket No. 53.)  The plaintiffs sur-replied. (Docket No. 55-1.)

## II.  LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's complaint must contain "'a short and plain statement of the claim.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); see also FED.R.CIV.P. 8(a)(2).  While a complaint need not contain detailed factual allegations, Rodriguez-Vives v. Puerto Rico Firefighters Corps of Puerto Rico, 743 F.3d 278, 283 (1st Cir.2014), a plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555 (internal quotation marks omitted). In assessing a claim's plausibility, we must construe the complaint in the plaintiff's favor, accept all non-conclusory allegations as true, and draw any reasonable inferences in favor of the plaintiff. Ashcroft v. Iqbal, 556 U.S. 662, 678 (citing Twombly, 550 U.S. at 570); accord Maloy v. Ballori-Lage, 744 F.3d 250, 252 (1st Cir.2014). When reviewing a motion to dismiss, we "must consider the complaint in its entirety, as well as other sources ordinarily examined when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues &

Rights, Ltd., 551 U.S. 308, 322 (2007).  Finally, determining the plausibility of a claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 556 U.S. at 679.

### III.  DISCUSSION

#### A. Standing

Standing is a "threshold question in every federal case."  Warth v. Seldin, 422 U.S. 490, 498 (1975).  Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies," U.S. Const. art. III, § 2.  The doctrine of standing serves to identify those disputes that are of the "justiciable sort referred to in Article III" and which are thus "'appropriately resolved through the judicial process,'" Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)(quoting Whitmore v. Arkansas, 495 U.S. 149, 155 (1990)).  In assessing standing, the Court focuses on the parties' right to have the Court decide the merits of the dispute.  Warth, 422 U.S. at 498.

To establish the irreducible constitutional minimum of standing, a plaintiff must prove that "he has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision."  Hollingsworth v. Perry, 570 U.S. ___, 133 S. Ct. 2652, 2661 (2013)(citing Lujan, 504 U.S. at 560-61 (1992)).

The Commonwealth argues that the plaintiffs lack standing because they have no injury traceable to the defendants and because they never applied for a marriage license.  But the plaintiffs have alleged a

sufficient injury, and it is not necessary for them to apply for a marriage license given the clarity of Puerto Rican law.  <u>See</u> <u>Cook v. Dept. of Mental Health, Retardation, & Hosps.</u>, 10 F.3d 17, 26 (1st Cir. 1993)(rejecting proposition "that the law venerates the performance of obviously futile acts").

The plaintiffs have satisfied the Court of their standing to sue.

Each of the plaintiffs wishes to marry and obtain the Commonwealth's "official sanction" of that marriage — a form of recognition unavailable to them given that Article 68 permits "marriage" in Puerto Rico solely between one man and one woman. (Docket No. 7 at 3.)  The plaintiffs have identified several harms flowing from Article 68, including the inability to file joint tax returns or to take advantage of certain legal presumptions, particularly as relates to adopting and raising children.  (<u>Id.</u> at 18-21.)  The plaintiffs have sued the Commonwealth officials responsible for enforcing Article 68.  <u>Ex parte Young</u>, 209 U.S. 123, 157 (1908)(holding a state official sued in his official capacity must "have some connection with the enforcement" of a challenged provision).  And should the plaintiffs prevail against these defendants, an injunction preventing the Commonwealth from enforcing Article 68 would redress their injuries by allowing them to marry as they wish and gain access to the benefits they are currently denied. All of that is sufficient to establish that the plaintiffs have a legally cognizable injury, redressable by suing these defendants.

## B. *Burford Abstention*

The <u>Burford</u> abstention doctrine stands as a narrow exception to the rule that federal courts "have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." <u>Quackenbush v. Allstate Ins. Co.</u>, 517 U.S. 706, 716 (1996). <u>Burford</u> abstention is proper where a case involves an unclear state-law question of important local concern that transcends any potential result in a federal case. <u>Burford v. Sun Oil Co.</u>, 319 U.S. 315, 332-34 (1943). However, "abstention is ... 'the exception, not the rule.'" <u>Colo. River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 813 (1976), and "there is, of course, no doctrine requiring abstention merely because resolution of a federal question may result in the overturning of a state policy." <u>Zablocki v. Redhail</u>, 434 U.S. 374, 379 n.5 (1978).

The Commonwealth contends that this Court should refrain from ruling on the constitutionality of Article 68 in the interest of allowing for the implementation of a coherent marriage policy. The Court is not persuaded.

Contrary to its contentions, the Commonwealth's marriage policy is neither unclear nor unsettled. In 1889, royal decree brought Puerto Rico within the ambit of the Spanish Civil Code. Title IV of that code governed marriage, including the "[r]ights and obligations of husband and wife." See Title IV "Marriage" of the Spanish Civil Code of 1889, <u>see</u> Attachment 1. The United States recognizes Puerto Rico's legal heritage, including its historical adherence to the Spanish Civil Code. <u>See</u>, e.g., <u>Ponce v. Roman Catholic Apostolic</u>

Church, 210 U.S. 296, 309 (1908)(holding that the legal and political institutions of Puerto Rico prior to annexation are, *pro tanto,* no longer foreign law).

Shortly after Puerto Rico became an unincorporated insular territory of the United States, see Treaty of Paris, Dec. 10, 1898, U.S.-Spain, Art. II 30 Stat. 1755, T.S. No. 343, Congress enacted the Foraker Act to establish the governing legal structure for the Island. See 31 Stat. 77 1900 [repealed].  The Act created a commission to draft several key pieces of legislation.  Id. at Section 40.  The ultimate result of the commission's work was the enactment of the Civil Code of 1902, which included Article 129:

> Marriage is a civil institution that emanates from a civil contract by virtue of which a man and a woman are mutually obligated to be husband and wife, and to fulfill for one another all the duties that the law imposes. It will be valid only when it is celebrated and solemnized in accordance with such provisions of law and may only be dissolved before the death of any of the spouses in those instances expressly provided for in this Code.

Puerto Rico, Civil Code 1902, title 4, chap. 1, § 129, see Attachment 2.  A revised Code was approved in 1930 that incorporated the 1902 code's definition of marriage as Article 68.  See P.R. LAWS ANN. tit. 31, § 221.  Two amendments were later added but the Code's original definition of marriage as between "a man and a woman" did not change. This long-standing definition, stretching across two distinct legal traditions, rules out animus as the primary motivation behind Puerto Rico's marriage laws.

From the time Puerto Rico became a possession of the United States its marriage laws have had the same consistent policy:

marriage is between one man and one woman.  For that reason, Puerto
Rico's marriage policy is neither unclear nor unsettled.

Besides, there is neither a parallel case in commonwealth court
nor any legislation currently pending, so this Court has no legitimate
reason to abstain.  A stay of these proceedings is neither required
nor appropriate.

### C. *Baker v. Nelson*

The plaintiffs have brought this challenge alleging a violation
of the federal constitution, so the first place to begin is with the
text of the Constitution.  The text of the Constitution, however, does
not directly guarantee a right to same-gender marriage, for "when the
Constitution was adopted the common understanding was that the
domestic relations of husband and wife and parent and child were
matters reserved to the States." See Windsor, 133 S.Ct. at 2691—92,
(citing Ohio ex rel. Popovici v. Agler, 280 U.S. 379, 383-384 (1930)).

Without the direct guidance of the Constitution, the next source
of authority is relevant Supreme Court precedent interpreting the
Constitution.  On the question of same-gender marriage, the Supreme
Court has issued a decision that directly binds this Court.

The petitioners in Baker v. Nelson were two men who had been
denied a license to marry each other.  They argued that Minnesota's
statutory definition of marriage as an opposite-gender relationship
violated due process and equal protection – just as the plaintiffs
argue here.  The Minnesota Supreme Court rejected the petitioners'
claim, determining that the right to marry without regard to gender
was not a fundamental right and that it was neither irrational nor

invidious discrimination to define marriage as requiring an opposite-gender union. <u>Baker v. Nelson</u>, 191 N.W.2d 185 (Minn. 1971).

The petitioners' appealed, pursuant to 28 U.S.C. § 1257(2) [repealed], presenting two questions to the Supreme Court: (1) whether Minnesota's "refusal to sanctify appellants' [same-gender] marriage deprive[d] appellants of their liberty to marry and of their property without due process of law under the Fourteenth Amendment"; and (2) whether Minnesota's "refusal, pursuant to Minnesota marriage statutes, to sanctify appellants' marriage because both are of the male sex violate[d] their rights under the equal protection clause of the Fourteenth Amendment." <u>Jackson v. Abercrombie</u>, 884 F.Supp.2d 1065, 1087 (<u>citing</u> <u>Baker</u>, Jurisdictional Stmt., No. 71-1027 at 3 (Feb. 11, 1971)). The Supreme Court considered both claims and unanimously dismissed the petitioners' appeal "for want of [a] substantial federal question." <u>Baker</u>, 409 U.S. at 810.

Decided five years *after* the Supreme Court struck down race-based restrictions on marriage in <u>Loving v. Virginia</u>, 388 U.S. 1 (1967), <u>Baker</u> was a mandatory appeal brought under then-28 U.S.C. § 1257(2)'s procedure. The dismissal was a decision on the merits, and it bound all lower courts with regard to the issues presented and necessarily decided, <u>Mandel v. Bradley</u>, 432 U.S. 173, 176 (1977) (per curiam); <u>see also</u> <u>Ohio ex. Rel. Eaton v. Price</u>, 360 U.S. 246, 247 (1959) ("Votes to affirm summarily, and to dismiss for want of a substantial federal question, it hardly needs comment, are votes on the merits of a case…").

Today, when the Supreme Court's docket is almost entirely discretionary, a summary dismissal or affirmance is rare.  In fact, the very procedural mechanism used by the Baker petitioners to reach the Supreme Court has since been eliminated.  See Public Law No. 100-352 (effective June 27, 1988).  That, however, does not change the precedential value of Baker.  This Court is bound by decisions of the Supreme Court that are directly on point; only the Supreme Court may exercise "the prerogative of overruling its own decisions." Rodriguez de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477, 484 (1989). This is true even where other cases would seem to undermine the Supreme Court's prior holdings.  Agostini v. Felton, 521 U.S. 203, 237 (1997)("We do not acknowledge, and we do not hold, that other courts should conclude our more recent cases have, by implication, overruled an earlier precedent...").  After all, the Supreme Court is perfectly capable of stating its intention to overrule a prior case.  But absent an express statement saying as much, lower courts must do as precedent requires.  State Oil Co. v. Khahn, 522 U.S. 3, 20 (1997) (noting that the "Court of Appeals was correct in applying" a decision even though later decisions had undermined it); see also Day v. Massachusetts Air Nat. Guard, 167 F.3d 678, 683 (1st Cir. 1999)(reiterating the Supreme Court's admonishment that circuit or district judges should not pioneer departures from Supreme Court precedent).  The Supreme Court, of course, is free to overrule itself as it wishes.  But unless and until it does, lower courts are bound by the Supreme Court's summary decisions "'until such time as the Court informs [them] that [they]

are not.'"  Hicks v. Miranda, 422 U.S. 332, 344 (1975)(citation omitted).

Thus, notwithstanding, Kitchen v. Herbert, 961 F.Supp.2d 1181, 1195 (D. Utah 2013) (Baker no longer controlling precedent), aff'd 755 F.3d 1193, 1204-08 (10th Cir. 2014); Bostic v. Schaefer, 970 F.Supp.2d 456, 469-70 (E.D. Va. 2014)(same), aff'd 760 F.3d 352, 373-75 (4th Cir. 2014); Baskin v. Bogan, --- F.Supp.2d ----, 2014 WL 2884868 at *5 (S.D. Ind. June 25, 2014)(same), aff'd, 766 F.3d 648, 659-60 (7th Cir. 2014); Wolf v. Walker, 986 F.Supp.2d 982, 988-92 (W.D. Wisc. 2014)(same), aff'd 766 F.3d 648, 659-60 (7th Cir. 2014); Latta v. Otter, --- F.Supp.2d ----, 2014 WL 1909999, at **7-10 (D. Idaho May 13, 2013)(same) aff'd, --- F.3d ----, 2014 WL 4977682 **2-3 (9th Cir. October 7, 2014); Bishop v. U.S. ex rel. Holder, 962 F.Supp.2d 1252, 1274-77 (N.D. Okla.2014)(same), aff'd, Bishop v. Smith, 760 F.3d 1070, 1079-81 (10th Cir. 2014); McGee v. Cole, 993 F.Supp.2d 639, 649 (S.D. W.Va. 2014)(same); DeLeon v. Perry, 975 F.Supp.2d 632, 648 (W.D. Tex. 2014)(order granting preliminary injunction)(same); DeBoer v. Snyder, 973 F.Supp.2d 757, 773 n.6 (E.D. Mich. 2014)(same); Brenner v. Scott, 999 F.Supp.2d 1278, 1290-1 (N.D. Fl. 2014)(same); Love v. Beshear, 989 F.Supp.2d 536, 541-2(W.D. Ky. 2014)(same); Whitewood v. Wolf, 992 F.Supp.2d 410, 419-21 (M.D. Pa. 2014)(same); Geiger v. Kitzhaber, 994 F.Supp.2d 1128, 1132 (D. Or. 2014)(same), this Court will apply Baker v. Nelson, as the Supreme Court has instructed it to do.  As a result, the plaintiffs' constitutional claims challenging the Puerto Rico Civil Code's recognition of opposite-gender marriage fail to present a substantial federal question, and this Court must dismiss them.

The plaintiffs would have this Court ignore Baker because of subsequent "doctrinal developments." Specifically, the plaintiffs see the Supreme Court's decisions in Romer, Lawrence, and Windsor as limiting Baker's application, as most other courts to consider the issue have held. But see, e.g., Sevcik v. Sandoval, 911 F.Supp.2d 996 (D. Nev. 2012)(holding Baker precludes equal protection challenge to existing state marriage laws) overruled by Latta v. Otter, --- F.3d ---, 2014 WL 4977682, at **2-3 (9th Cir. 2014); Jackson, 884 F.Supp.2d at 1086—88 (holding that Baker is the last word from Supreme Court regarding the constitutionality of a state law limiting marriage to opposite-gender couples); Wilson v. Ake, 354 F.Supp.2d 1298, 1304—05 (M.D. Fla. 2005)(holding Baker required dismissal of due process and equal protection challenge to Florida's refusal to recognize out-of-state same-gender marriages). The Court cannot agree.

For one thing, the First Circuit has spared us from the misapprehension that has plagued our sister courts. The First Circuit expressly acknowledged – a mere two years ago – that Baker remains binding precedent "unless repudiated by subsequent Supreme Court precedent." Massachusetts v. U.S. Dept. of Health and Human Services, 682 F.3d 1, 8 (1st Cir. 2012). According to the First Circuit, Baker prevents the adoption of arguments that "presume or rest on a constitutional right to same-sex marriage." Id. Even creating "a new suspect classification for same-sex relationships" would "imply[ ] an overruling of Baker," – relief that the First Circuit acknowledged is beyond a lower court's power to grant. This Court agrees, and even if this Court disagreed, the First Circuit's decision would tie this

Court's hands no less surely than <u>Baker</u> ties the First Circuit's hands.

Nor can we conclude, as the plaintiffs do, that the First Circuit's pronouncements on this subject are dicta. Dicta are those observations inessential to the determination of the legal questions in a given dispute. <u>Merrimon v. Unum Life Ins. Co. of America</u>, 758 F.3d 46, 57 (1st Cir. 2014)(citation omitted); <u>see also</u> <u>Dedham Water Co. v. Cumberland Farms Dairy, Inc.</u>, 972 F.2d 453, 459 (1st Cir. 1992)("Dictum constitutes neither the law of the case nor the stuff of binding precedent."). Or, said another way, "[w]henever a question fairly arises in the course of a trial, and there is a distinct decision of that question, the ruling of the court in respect thereto can, in no just sense, be called mere *dictum.*" <u>See</u> <u>Union Pac. R. Co. v. Mason City & Ft. D.R. Co.</u>, 199 U.S. 160, 166 (1905).

In <u>Massachusetts v. HHS</u>, the defendants argued that <u>Baker</u> foreclosed the plaintiff's claims. The First Circuit concluded that <u>Baker</u> was binding but that it did not address all of the issues presented in the particular dispute. The conclusion that <u>Baker</u> was binding precedent was a considered legal pronouncement of the panel. Without that conclusion, the remainder of the argument – that <u>Baker</u> nevertheless did not control the case at hand – would have been unnecessary. That the panel engaged in a deliberate discussion shows that their conclusion about <u>Baker</u>'s "binding" nature carried practical and legal effect in their opinion — in other words, it was necessary to the outcome. If the plaintiffs' reading of <u>Massachusetts v. HHS</u> were correct, any opinion rejecting a constitutional argument but

deciding the case on another ground would be dicta as to the constitutional question, because only the non-constitutional argument was "necessary" to resolve the case.   That is hardly the way courts understand their rulings to work.   In Massachusetts v. HHS, the First Circuit decided the case the way that it did in part because Baker foreclosed other ways in which it might have decided the same question.   That considered holding binds this Court.

Nor is this Court persuaded that we should follow the Second Circuit's opinion about what the First Circuit said in Massachusetts v. HHS.   See Windsor v. United States, 699 F.3d 169, 179 (2d Cir. 2012)("The First Circuit has suggested in dicta that recognition of a new suspect classification in this context would 'imply an overruling of Baker.'").   In fact the utterings of the Second Circuit were a bit more developed than what the plaintiffs let on.   The Second Circuit recognized that Baker held that the use of the traditional definition of marriage for a state's own regulation of marriage did not violate equal protection.   Id. at 194.   But it distinguished Section 3 of the Defense of Marriage Act (DOMA), asserting "[t]he question whether the federal government may constitutionally define marriage as it does . . . . is sufficiently distinct from the question . . . whether same sex marriage may be constitutionally restricted by the states."   Id. at 178.   Nothing in the Second Circuit's opinion addressed the First Circuit's explicit holding that Baker remains binding precedent.   More importantly, only the First Circuit's opinions bind this court.

Even if the First Circuit's statements about Baker were dicta, they would remain persuasive authority, and as such, they further

support the Court's independent conclusions about, and the impact of subsequent decisions on, Baker.

And even if the Court assumes for the sake of argument that the First Circuit has not determined this issue, the Court cannot see how any "doctrinal developments" at the Supreme Court change the outcome of Baker or permit a lower court to ignore it.

The plaintiffs' reliance on Romer v. Evans, 517 U.S. 620 (1996) and Lawrence v. Texas, 539 U.S. 558 (2003) is misplaced.   Romer invalidated a state law repealing and barring sexual-orientation discrimination protection.   Lawrence involved the very different question of a state government's authority to criminalize private, consensual sexual conduct.   Neither case considered whether a state has the authority to define marriage.

Judge Boudin, writing for the three-judge panel in Massachusetts v. HHS, likewise recognized that Romer and Lawrence do not address whether the Constitution obligates states to recognize same-gender marriage.   Judge Boudin explained that, while certain "gay rights" claims have prevailed at the Supreme Court, e.g., Romer and Lawrence, those decisions do not mandate states to permit same-gender marriage. Massachusetts v. HHS, 682 F.3d at 8.   The Court agrees and notes that the First Circuit's understanding comports with the explicit statements of the Supreme Court.   See Lawrence, 539 U.S. at 578 ("[t]he present case does not involve ... whether the government must give formal recognition to any relationship that homosexual persons seek to enter.") (Op. of Kennedy, J.).

Windsor does not – cannot – change things.  Windsor struck down Section 3 of DOMA which imposed a federal definition of marriage, as an impermissible federal intrusion on state power.  133 S. Ct. at 2692.  The Supreme Court's understanding of the marital relation as "a virtually exclusive province of the States," Id. at 2680 (quoting Sosna v. Iowa, 419 U.S. 393, 404 (1975)), led the Supreme Court to conclude that Congress exceeded its power when it refused to recognize state-sanctioned marriages.

The Windsor opinion did not create a fundamental right to same-gender marriage nor did it establish that state opposite-gender marriage regulations are amenable to federal constitutional challenges.  If anything, Windsor stands for the opposite proposition: it reaffirms the States' authority over marriage, buttressing Baker's conclusion that marriage is simply not a federal question.  Windsor, 133 S. Ct. at 2691-93 ("[t]he definition of marriage is the foundation of the State's broader authority to regulate the subject of domestic relations with respect to the '[p]rotection of offspring, property interests, and the enforcement of marital responsibilities'"); accord Massachusetts v. HHS, 682 F.3d at 12 ("DOMA intrudes into a realm that has from the start of the nation been primarily confided to state regulation – domestic relations and the definition and incidents of lawful marriage – which is a leading instance of the states' exercise of their broad police-power authority over morality and culture.") Contrary to the plaintiffs' contention, Windsor does not overturn Baker; rather, Windsor and Baker work in tandem to emphasize the States' "historic and essential authority to define the marital

relation" free from "federal intrusion." <u>Windsor</u>, 133 S.Ct. at 2692. It takes inexplicable contortions of the mind or perhaps even willful ignorance – this Court does not venture an answer here – to interpret <u>Windsor</u>'s endorsement of the state control of marriage as eliminating the state control of marriage.

The plaintiffs contend, as well, that the Supreme Court's recent denial of *certiorari* in three cases where <u>Baker</u> was expressly overruled is tantamount to declaring that <u>Baker</u> is no longer good law. The denial of *certiorari* is not affirmation. <u>See</u> <u>Maryland v. Baltimore Radio Show</u>, 338 U.S. 912, 919 (1950)(holding that denial of petition for *certiorari* "does not remotely imply approval or disapproval" of lower court's decision); <u>Hughes Tool Co. v. Trans World Airlines, Inc</u>., 409 U.S. 363, 365 n.1 (1973)(holding denial of certiorari imparts no implication or inference concerning the Supreme Court's view of the merits). That the Supreme Court denied *certiorari* in <u>Baskin</u>, <u>Bostic</u>, and <u>Kitchen</u> speaks more to the fact that there is not, as of yet, a split among the few circuit courts to consider this issue. <u>See</u> Sup. Ct. R. 10. For now, if presumptions must be made about the unspoken proclivities of the Supreme Court, they ought to be governed by the prudent injunction that "a denial of certiorari on a novel issue will permit the state and federal courts to 'serve as laboratories in which the issue receives further study before it is addressed by this Court.'" <u>Lackey v. Texas</u>, 514 U.S. 1045 (1995)(Stevens, J. respecting denial of *certiorari*)(citation omitted).

Nor does the procedural outcome of <u>Hollingsworth v. Perry</u>, imply that the Supreme Court has overruled <u>Baker</u>. The plaintiffs creatively

argue that when the Supreme Court dismissed <u>Hollingsworth</u>, its judgment had the effect of vacating the Ninth Circuit's opinion and leaving the district court's opinion intact. Because the district court's opinion (which struck down California's ban on same-gender marriage) was allowed to stand, the plaintiffs say the Supreme Court tacitly recognized that the right to same-gender marriage presents a federal question. But that outcome was entirely caused by California's decision not to appeal the district court's adverse ruling. A group of intervenors appealed the case when the state would not, and those intervenors lost again at the Ninth Circuit. They appealed to the Supreme Court, which concluded that they lacked standing to appeal. Because the intervenors lacked standing, the portion of the litigation that they pursued (the Ninth Circuit and Supreme Court appeals) was invalid. The district court's judgment remained intact, not because the Supreme Court approved of it — tacitly or otherwise — but because no party with standing had appealed the district court's decision to the Supreme Court such that it would have jurisdiction to decide the dispute. Thus, nothing about the <u>Hollingsworth</u> decision renders <u>Baker</u> bad law.

Lower courts, then, do not have the option of departing from disfavored precedent under a nebulous "doctrinal developments" test. <u>See</u> <u>National Foreign Trade Council v. Natsios</u>, 181 F.3d 38, 58 (1st Cir. 1999) ("[D]ebate about the continuing viability of a Supreme Court opinion does not, of course, excuse the lower federal courts from applying that opinion.")(Op. of Lynch, J.); <u>see</u> <u>also</u>, <u>Scheiber v. Dolby Labs., Inc.</u>, 293 F. 3d 1014, 1018 (7th Cir. 2002) ("[W]e have no

authority to overrule a Supreme Court decision no matter how dubious its reasoning strikes us, or even how out of touch with the Supreme Court's current thinking the decision seems.")(Op. of Posner, J.). Consequently, neither _Romer_, _Lawrence_, nor _Windsor_, wreck doctrinal changes in Supreme Court jurisprudence sufficient to imply that _Baker_ is no longer binding authority.  See _U.S. v. Symonevich_, 688 F.3d 12, 20 n. 4 (1st Cir. 2012) (holding that, generally, an argument that the Supreme Court has implicitly overruled one of its earlier decisions is suspect).

_Baker_, which necessarily decided that a state law defining marriage as a union between a man and woman does not violate the Fourteenth Amendment, remains good law.  Because no right to same-gender marriage emanates from the Constitution, the Commonwealth of Puerto Rico should not be compelled to recognize such unions. Instead, Puerto Rico, acting through its legislature, remains free to shape its own marriage policy.  In a system of limited constitutional self-government such as ours, this is the prudent outcome.  The people and their elected representatives should debate the wisdom of redefining marriage.  Judges should not.

### IV. CONCLUSION

That this Court reaches its decision by embracing precedent may prove disappointing.  But the role of precedent in our system of adjudication is not simply a matter of binding all succeeding generations to the decision that is first in time.  Instead, _stare decisis_ embodies continuity, certainly, but also limitation: there are some principles of logic and law that cannot be forgotten.

Recent affirmances of same-gender marriage seem to suffer from a peculiar inability to recall the principles embodied in existing marriage law. Traditional marriage is "exclusively [an] opposite-sex institution . . . inextricably linked to procreation and biological kinship," Windsor, 133 S. Ct. at 2718 (Alito, J., dissenting). Traditional marriage is the fundamental unit of the political order. And ultimately the very survival of the political order depends upon the procreative potential embodied in traditional marriage.

Those are the well-tested, well-proven principles on which we have relied for centuries. The question now is whether judicial "wisdom" may contrive methods by which those solid principles can be circumvented or even discarded.

A clear majority of courts have struck down statutes that affirm opposite-gender marriage only. In their ingenuity and imagination they have constructed a seemingly comprehensive legal structure for this new form of marriage. And yet what is lacking and unaccounted for remains: are laws barring polygamy, or, say the marriage of fathers and daughters, now of doubtful validity? Is "minimal marriage", where "individuals can have legal marital relationships with more than one person, reciprocally or asymmetrically, themselves determining the sex and number of parties" the blueprint for their design? See Elizabeth Brake, *Minimal Marriage: What Political Liberalism Implies for Marriage Law*, 120 ETHICS 302, 303 (2010). It would seem so, if we follow the plaintiffs' logic, that the fundamental right to marriage is based on "the constitutional liberty to select the partner of one's choice." (Docket No. 7 at 4.)

Of course, it is all too easy to dismiss such concerns as absurd or of a kind with the cruel discrimination and ridicule that has been shown toward people attracted to members of their own sex.  But the truth concealed in these concerns goes to the heart of our system of limited, consent-based government: those seeking sweeping change must render reasons justifying the change and articulate the principles that they claim will limit this newly fashioned right.

For now, one basic principle remains: the people, acting through their elected representatives, may legitimately regulate marriage by law.  This principle

> is impeded, not advanced, by court decrees based on the proposition that the public cannot have the requisite repose to discuss certain issues. It is demeaning to the democratic process to presume that the voters are not capable of deciding an issue of this sensitivity on decent and rational grounds . . . Freedom embraces the right, indeed the duty, to engage in a rational, civic discourse in order to determine how best to form a consensus to shape the destiny of the Nation and its people.

Schuette v. Coalition to Defend Affirmative Action, 572 U.S. __, 134 S.Ct. 1623, 1637 (2014)(Op. of Kennedy, J.).

For the foregoing reasons, we hereby **GRANT** the defendants' motion to dismiss.  (Docket No. 31.)  The plaintiffs' federal law claims are **DISMISSED WITH PREJUDICE**.


**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 21st day of October, 2014.

                              S/ **JUAN M. PÉREZ-GIMÉNEZ**
                              **JUAN M. PÉREZ-GIMÉNEZ**
                              **UNITED STATES DISTRICT JUDGE**