**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

ADA CONDE VIDAL, ET AL.,

     Plaintiffs,

          v.

ALEJANDRO GARCIA-PADILLA, ET AL.,

     Defendants.

CIVIL NO. 14-1253 (PG)

<u>OPINION AND ORDER</u>

**For, certainly, no legislation can be supposed more wholesome and necessary in the founding of a free, self-governing commonwealth, fit to take rank as one of the co-ordinate states of the Union, than that which seeks to establish it on the basis of the idea of the family, as consisting in and springing from the union for life of one man and one woman in the holy estate of matrimony; the sure foundation of all that is stable and noble in our civilization; the best guaranty of that reverent morality which is the source of all beneficent progress in social and political improvement.[1]**

## I.   BACKGROUND

The instant action was commenced almost two years ago by the plaintiffs – a group of individuals and a lesbian, gay, bisexual and transgender nonprofit advocacy organization who have challenged the constitutionality of the Commonwealth of Puerto Rico's codification of opposite-sex marriage under Article 68 of the Puerto Rico Civil Code ("Article 68").[2] <u>See</u> P.R. Laws Ann. tit. 31, § 221. The plaintiffs seek declaratory and injunctive relief for violation of their rights under the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Upon the defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), <u>see</u> Docket No. 31, on October 21, 2014, the court dismissed the plaintiffs' claims with prejudice for failure to present a substantial federal question. <u>See</u>

---

[1] <u>Murphy v. Ramsey</u>, 114 U.S. 15, 45 (1885).

[2] The plaintiffs include two same-sex couples who seek the right to marry in Puerto Rico; three-same sex couples who are validly married under the laws of Massachusetts, New York, and Canada, respectively, and who wish to have their marriages recognized in the island; and the LGBT advocacy group Puerto Rico Para Tod@s. <u>See</u> Docket No. 7. For a detailed discussion of each of the parties' arguments at the dismissal stage of the proceedings, the court refers to that included at Docket No. 57.

Civil No. 14-1253 (PG)                                                                    Page 2

Docket No. 57 at page 11. Judgment was entered on that same date. See Docket No. 58. An appeal ensued. See Docket No. 59.

While the appeal was pending, the Supreme Court decided Obergefell v. Hodges, 135 S.Ct. 2584 (2015), ruling on the issue of same-sex marriage under the Constitution. There, the Court concluded that under the Due Process and Equal Protection Clauses of the Fourteenth Amendment same-sex couples may not be deprived of the fundamental right to marry. See id. at 2604-2605. Thus, the marriage laws of the States of Michigan, Kentucky, Ohio, and Tennessee challenged by the petitioners in the consolidated cases reviewed by the Court were held invalid. See id. at 2605.

On July 8, 2015, twelve days after the Supreme Court's landmark ruling, the First Circuit vacated this court's judgment and remanded the case "for further consideration in light of Obergefell v. Hodges." See Docket No. 62 (citation omitted). In doing so, the First Circuit expressed that it "agree[s] with the parties' joint position that the ban is unconstitutional." Id. (alteration in original).

On July 17, 2015, the parties filed a "Joint Motion for Entry of Judgment," wherein they request a determination that Article 68, and any other Puerto Rico law that (i) prohibits same-sex marriage; (ii) denies same-sex couples the rights and privileges afforded to opposite-sex couples, and (iii) refuses to recognize same-sex marriages validly performed under the laws of another jurisdiction, violate the Fourteenth Amendment to the Constitution of the United States. See Docket Nos. 64 and 64-1. The parties also seek injunctive relief against the enforcement of Article 68 and any other law denying same-sex couples the right to marry. The relief now sought by the parties is intended "to benefit all LGBT people and same-sex couples in Puerto Rico...." [3] See id. at pages 2-3. For the reasons set forth below, the court **DENIES** the parties' joint motion.

---

[3] The parties further request a ruling regarding the binding effect of the court's disposition for purposes of issue and claim preclusion. See id. For the reasons that follow, the court does not reach the request.

## II.   DISCUSSION

### A. The Obergefell decision

The Supreme Court's ruling in Obergefell seems to touch directly upon the issue at the heart of this litigation, to wit, whether Puerto Rico's marriage ban found in Article 68 violates the Fourteenth Amendment. See U.S. Const. amend. XIV, § 1.

In the consolidated cases on review before the Supreme Court, the petitioners, fourteen same-sex couples and two men whose same-sex partners are deceased, challenged the marriage laws of the States of Michigan, Kentucky, Ohio and Tennessee that defined marriage as a union between one man and one woman. See Obergefell, 135 S.Ct. at 2593. The first issue decided by the Court was "whether the Constitution protects the right of same-sex couples to marry." Id. at 2606. After identifying the historical, cultural and legal principles and traditions that have shaped the right to marry as a fundamental one under the Constitution, the Court concluded that under the Due Process and Equal Protection Clauses of the Fourteenth Amendment same-sex couples may not be deprived of that right. See id. at 2604-2605. The Court also held that "Baker v. Nelson must be and now is overruled, and the **State laws challenged by Petitioners in these cases are now held invalid** to the extent they **exclude same-sex couples from civil marriage on the same terms and conditions as opposite-sex couples."** Id. **at 2605** (emphasis added).

The Obergefell cases also "present[ed] the question of whether the Constitution requires States to recognize same-sex marriages validly performed out of State." Id. at 2607. In its analysis, the Court indicated that the "recognition bans" on valid same-sex marriages performed in other States inflicted substantial harm on same-sex couples and could continue to cause hardships in certain events, such as a spouse's hospitalization, across state lines. See id. The Court also noted the distressing complications such bans created in the law of domestic relations. See id. These reasons led to the following conclusion:

> **The Court, in this decision, holds that same-sex couples may exercise this fundamental right in all States. It follows that the Court must also hold--and it now does hold--that there is no lawful basis for a State to refuse to recognize a lawful**

**same-sex marriage performed in another State on the ground of
its same-sex character.**

Id. at 2607-2608 (emphasis added).

As forewarned in this court's opinion and order from October 21,
2014, see Docket No. 57, lower courts are bound by the Supreme Court's
decisions "'until such time as the Court informs [them] that [they] are
not.'" Hicks v. Miranda, 422 U.S. 332, 344 (1975)(citation omitted).
After careful consideration, this court reads the Supreme Court's
decision in Obergefell as one incorporating the fundamental right to
same-sex marriage in all States through the Fourteenth Amendment and,
consequently, striking down the marriage and recognition bans codified in
the laws of four States in violation of the Due Process and Equal
Protection Clauses of that Amendment.[4] However, Obergefell did not
incorporate the fundamental right at issue to Puerto Rico through the
Fourteenth Amendment, nor did it invalidate Article 68. And it is not
within the province of this court to declare, as the parties ask, that
the Fourteenth Amendment guarantees same-sex couples in Puerto Rico the
right to marry.[5]

In interpreting Obergefell, this court is bound by an elementary
principle of federal jurisdiction under which "[a] judgment or decree
among the parties to a lawsuit resolves issues among them, but it does
not conclude the right of strangers to those proceedings." Martins v.
Wilkis, 490 U.S. 755, 762 (1989), *superseded by statute,* Civil Rights Act
of 1991, Pub. L. 102-166, 105 Stat. 1071; see also Doran v. Salem Inn,
Inc., 422 U.S. 922, 931 (1975)(noting that "neither declaratory nor
injunctive relief can directly interfere with enforcement of contested
statutes or ordinances except with respect to the particular

---

[4] As noted by the Supreme Court, "[t]hese cases [came] from Michigan, Kentucky,
Ohio, and Tennessee." Obergefell, 135 S.Ct. at 2593 (alteration in original).

[5] Just hours after the Supreme Court's decision in Obergefell, the Governor of
Puerto Rico, Hon. Alejandro Garcia Padilla, signed Executive Order OE-2015-21, requiring
several government agencies to become compliant with the ruling and take all measures
necessary for the issuance of marriage licenses to same-sex couples. Subsequently,
various members of the Puerto Rico Legislature filed suit before the Puerto Rico Court of
First Instance, San Juan Part, challenging the constitutionality of the Governor's
actions. See Maria M. Charbonier et al. v. Hon. Alejandro Garcia Padilla, et al. (case
number not verified). As the plaintiffs see it, the fundamental right to marry between
same-sex couples has not been applied against the Government of Puerto Rico through the
Due Process Clause of the Fourteenth Amendment. The plaintiffs also raise claims of a
separation of powers violation by the First Executive.

plaintiffs...."). This supports the conclusion that <u>Obergefell</u> does not directly invalidate Article 68 or resolves the issues presented before this court.[6]

At this juncture, the court's job is to determine the extent, if any, to which <u>Obergefell</u> impacts the Puerto Rico marriage laws. This task, in turn, requires examining two doctrines elaborated by the Supreme Court that touch directly upon the incorporation of certain fundamental rights, such as the right to marry, to the States and Puerto Rico through the Fourteenth Amendment.

### B. The Doctrine of Selective Incorporation

At the time of its adoption in 1871, the Bill of Rights –and, particularly, the individual liberties secured within it– did not apply against the States. <u>See</u> <u>Barron ex rel. Tiernan v. Baltimore</u>, 32 U.S. 243, 250 (1833)(noting that the amendments found in the Bill of Rights "contain no expression indicating an intention to apply them to the State governments"); <u>Lessee of Livingston v. Moore</u>, 32 U.S. 469, 551-552 (1833)(same). Nevertheless, in the aftermath of the Civil War, the Fourteenth Amendment to the Constitution was adopted to protect certain individual rights from interference by the States.[7] And thereafter, the Supreme Court began using that Amendment's Due Process Clause to "incorporate" a number of the individual liberties found in the first ten Amendments against the States, "initiating what has been called a process of 'selective incorporation,' i.e. the Court began to hold that the Due Process Clause fully incorporates particular rights contained in the

---

[6] It is worth noting the decisions of other sister courts discussing the impact of <u>Obergefell</u> with respect to the marriage laws of other States prohibiting the issuance of same-sex marriage licenses. <u>See</u> <u>Waters v. Ricketts</u>, 798 F.3d 682, 685 (8th Cir. 2015)(noting that "[t]he [Obergefell] Court invalidated laws in Michigan, Kentucky, Ohio, and Tennessee – not Nebraska"); <u>Jernigan v. Crane</u>, 796 F.3d 976, 979 (8th Cir. 2015)("not Arkansas"); <u>Rosenbrahn v. Daugaard</u>, 799 F.3d 918, 922 (8th Cir. 2015)("not South Dakota"); <u>see</u> <u>also</u> <u>Marie v. Mosier</u>, Case No. 14-cv-02518-DDC-TJJ, 2015 WL 4724389, at *14 (D. Kan. Aug. 10, 2015)(noting that "[w]hile *Obergefell* is clearly controlling Supreme Court precedent, it did not directly strike down the provisions of the Kansas Constitution and statutes that ban issuance of same-sex marriage licenses and prohibit the recognition of same-sex marriages entered into in Kansas and elsewhere.")(internal quotations omitted).

[7] The Fourteenth Amendment provides, in pertinent part, that "[n]o State shall...deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

first [ten] Amendments." <u>McDonald v. City of Chicago, III.</u>, 561 U.S. 742, 763 (2010)(alteration in original)(listing cases).

In the cases decided during this era, the Court fashioned the boundaries of the Due Process Clause by expressly incorporating those rights considered fundamental to a scheme of ordered liberty and system of justice. <u>See</u> <u>id.</u>, 561 U.S. at 760-764; <u>see</u> <u>also</u> <u>Palko v. Connecticut</u>, 302 U.S. 319 (1937)(indicating that due process protects those rights that are "the very essence of a scheme of ordered liberty"); <u>Duncan v. Louisiana</u>, 391 U.S. 145, 148 (1968)(referring to those "fundamental principles of liberty and justice which lie at the base of all our civil and political institutions")(internal quotations omitted). Today, most of the rights found in the first ten Amendments have been incorporated.[8]

Notwithstanding, the incorporation of fundamental rights to Puerto Rico through the Fourteenth Amendment, unlike the States, is not automatic. <u>See</u> <u>Mora v. Torres</u>, 113 F.Supp. 309, 319 (D.P.R. 1953), aff'd sub. nom., <u>Mora v. Mejias</u>, 206 F.2d 377 (1st Cir. 1953)(holding that the Fourteenth Amendment is not applicable to Puerto Rico insofar as Puerto Rico is not a federated state within the terms of said Amendment)(citation omitted). Thus, for the reasons that follow, the court concludes that absent an express decision from the Supreme Court of the United States, the Supreme Court of Puerto Rico, Congress or the

---

[8] With respect to the First Amendment, <u>see</u> <u>Everson v. Board of Ed. of Ewing</u>, 330 U.S. 1 (1947)(Establishment Clause); <u>Cantwell v. Connecticut</u>, 310 U.S. 296 (1940)(Free Exercise Clause); <u>De Jonge v. Oregon</u>, 299 U.S. 353 (1937)(freedom of assembly); <u>Gitlow v. New York</u>, 268 U.S. 652 (1925)(free speech); <u>Near v. Minnesota ex rel. Olson</u>, 283 U.S. 697 (1931)(freedom of the press).

As to the Second Amendment's right to bear arms, <u>see</u> <u>McDonald v. City of Chicago</u>, 561 U.S. at 742.

With respect to the Fourth Amendment, <u>see</u> <u>Aguilar v. Texas</u>, 378 U.S. 108 (1964)(warrant requirement); <u>Mapp v. Ohio</u>, 367 U.S. 643 (1961)(exclusionary rule); <u>Wolf v. Colorado</u>, 338 U.S. 25 (1949)(freedom from unreasonable searches and seizures).

With respect to the Fifth Amendment, <u>see</u> <u>Benton v. Maryland</u>, 395 U.S. 784 (1969)(Double Jeopardy Clause); <u>Malloy v. Hogan</u>, 378 U.S. 1 (1964)(privilege against self-incrimination); <u>Chicago, B. & Q.R. Co. v. Chicago</u>, 166 U.S. 22 (1897)(Just Compensation Clause).

With respect to the Sixth Amendment, <u>see</u> <u>Duncan</u> , 391 U.S. 145 (trial by jury in criminal cases); <u>Washington v. Texas</u>, 388 U.S. 14 (1967)(compulsory process); <u>Klopfer v. North Carolina</u>, 386 U.S. 213 (1967)(speedy trial); <u>Pointer v. Texas</u>, 380 U.S. 400 (1965)(Confrontation Clause); <u>Gideon v. Wainwright</u>, 372 U.S. 335 (1963)(assistance of counsel); <u>In re Oliver</u>, 333 U.S. 257 (1948)(right to a public trial).

With respect to the Eighth Amendment, see <u>Robinson v. California</u>, 370 U.S. 660 (1962)(Cruel And Unusual Punishments Clause); <u>Schilb v. Kuebel</u>, 404 U.S. 357 (1971)(Excessive Bail Clause).

Civil No. 14-1253 (PG)                                                    Page 7

Puerto Rico Legislature, the fundamental right claimed by the plaintiffs in this case has not been incorporated to Puerto Rico.

### C. Now, does the Constitution follow the flag? The Doctrine of Territorial Incorporation

**And the determination of what particular provision of the Constitution is applicable, generally speaking, in all cases, involves an inquiry into the situation of the territory and its relations to the United States.[9]**

At the dawn of the 20th century, the Supreme Court rendered a series of decisions later known as the Insular Cases,[10] that established "a vital distinction between incorporated and unincorporated territories with the second category describing possessions of the United States not necessarily thought of as future States." U.S. v. Lebron_Caceres, Criminal No. 15-279 (PAD), 2016 WL 204447, at *6 (D.P.R. Jan. 14, 2016).[11] Puerto Rico ultimately fell into the second category. Indeed, the Supreme Court explained that with the ratification of the Treaty of Paris, "the island became territory of the United States, although not an organized territory in the technical sense of the word." De Lima v. Bidwell, 182 U.S. at 196.

"The Insular Cases allowed the Court to address whether the Constitution, by its own force, applies in any territory that is not a State." Boumediene v. Bush, 553 U.S. 726, 756 (2008)(citation omitted). The considerations inherent in the Supreme Court's position, one that

---

[9] Downes v. Bidwell, 182 U.S. 244, 293 (1901)(White, J., concurring)(questioning whether the Citizenship Clause of the Fourteenth Amendment naturally and inexorably extends to acquired territories).

[10] See Huus v. N.Y. & Porto Rico S.S. Co., 182 U.S. 392 (1901)(holding that a vessel engaged in trade between the island and New York engaged in coastal, and not foreign trade); Downes v. Bidwell, 182 U.S. 244 (holding that Puerto Rico did not become a part of the United States within the meaning of Article I, Section 8 of the Constitution); Armstrong v. United States, 182 U.S. 243 (1901)(holding that the tariffs imposed on goods exported from the mainland to Puerto Rico were invalid after the ratification of the Treaty of Paris); Dooley v. United States, 182 U.S. 222 (1901)(holding that the right of the president to exact duties on imports from Puerto Rico into the mainland ceased after the ratification of the Treaty of Paris); Goetze v. United States, 182 U.S. 221 (1901)(holding that Puerto Rico and Hawaii were not foreign countries within the meaning of the U.S. tariff laws); De Lima v. Bidwell, 182 U.S. 1 (1901)(holding that at the times the duties challenged by the plaintiff were levied, Puerto Rico was not a foreign country for purposes of the tariff laws, but a territory of the United States).

[11] For a detailed analysis of the relationship between the United States and Puerto Rico through the doctrine of territorial incorporation, as well as the judicial developments regarding the application of various provisions of the Federal Constitution in Puerto Rico, the court refers to that included in the case of U.S. v. Lebron Caceres, 2016 WL 204447.

views the Constitution as having an independent force in noncontiguous
territories such as Puerto Rico, resulted in the doctrine of territorial
incorporation. See id. at page 757. Under this doctrine, "the
Constitution applies in full in incorporated Territories surely destined
for statehood but only in part in unincorporated Territories." Id.
(citing Dorr v. United States, 195 U.S. 138 (1904);[12] Downes, 182 U.S. at
293 (White, J., concurring)).

        Even after the enactment of the Foraker Act, 31 Stat. 77
(1900)(codified at 11 U.S.C. §§ 1, 11), providing for an elected
legislature, and a governor and supreme court appointed by the President
of the United States, and the Jones Act, 39 Stat. 951 (1917)(codified at
48 U.S.C. § 737), which granted statutory United States citizenship to
the people of Puerto Rico and provided for an enhanced, bicameral
legislature, Puerto Rico remained an unincorporated territory of the
United States to which the Bill of Rights of the Constitution did not
apply *ex propio vigore*.[13] See Balzac v. Porto Rico, 258 U.S. 298, 304
(1922)(reaffirming the doctrine of territorial incorporation); see also
Reid v. Covert, 354 U.S. 1, 74 (1957)(Harlan, J., concurring)("The
proposition is, of course, not that the Constitution does not apply
overseas, but that there are provisions in the Constitution which do not
necessarily apply in every foreign place.").

        Notwithstanding the intense political, judicial and academic debate
the island's territorial status has generated over the years, the fact is
that, to date, Puerto Rico remains an unincorporated territory subject to
the plenary powers of Congress over the island under the Territorial
Clause.[14] More importantly, jurisprudence, tradition and logic teach us

---

[12] In Dorr, the Court held that territories ceded by treaty to the United States
and not yet incorporated by Congress are subject to Congressional territorial authority
and "to such constitutional restrictions upon the powers of that body that are applicable
to the situation."

[13] The same conclusion is reached with respect to Public Law 600, 64 Stat. 319
(codified at 48 U.S.C. § 731b et seq.), enacted by Congress in 1950, and which provided
federal statutory authorization for the citizens of Puerto Rico to write their own
constitution, subject to congressional approval. See Popular Democratic Party v. Com. of
Puerto Rico, 24 F.Supp.2d 184, 194 (D.P.R. 1998).

[14] In declining to interpret a federal bankruptcy statute to avoid Tenth Amendment
concerns, the First Circuit recently indicated that "[t]he limits of the Tenth Amendment
do not apply to Puerto Rico, '**which is constitutionally a territory**,' United States v.
Lopez Andino, 831 F.3d 1164, 1172 (1st Cir. 1987)(Torruella, J., concurring), because
Puerto Rico's powers are not those reserved to the States, but those specifically granted
to it by Congress under its constitution." Franklin California Tax-Free Trust v. Puerto
Rico, 805 F.3d 322, 344-345 (1st Cir. 2015)(emphasis added)(citation omitted).

that Puerto Rico is not treated as the functional equivalent of a State for purposes of the Fourteenth Amendment. As explained by the Supreme Court, "noting the inherent practical difficulties of enforcing all constitutional provisions 'always and everywhere,' the Court devised in the Insular Cases a doctrine that allowed it to use its power sparingly and where it would be most needed." Boumedine, 553 U.S. at 758 (internal citation omitted).

It is in light of the particular condition of Puerto Rico in relation to the Federal Constitution, with due consideration of the underlying cultural, social and political currents that have shaped over five centuries of Puerto Rican history, that the court examines the effect of Obergefell in the instant case. The court's analysis, therefore, does not end with the incorporation of the fundamental right to same-sex marriage in the States. Generally, the question of whether a constitutional guarantee applies to Puerto Rico is subject to determination by Supreme Court of the United States, See Torres v. Com. of Puerto Rico, 442 U.S. 456, 478 (1979), in the exercise of its authority "to say what the law is." See Marbury v. Madison, 5 U.S. 137, 177 (1803). Thus, this court believes that the right to same-sex marriage in Puerto Rico requires: **(a)** further judicial expression by the U.S. Supreme Court; or **(b)** the Supreme Court of Puerto Rico, see e.g. Pueblo v. Duarte, 109 D.P.R. 59 (1980)(following Roe v. Wade, 410 U.S. 113 (1973) and declaring a woman's right to have an abortion as part of the fundamental right to privacy guaranteed under the Fourteenth Amendment); **(c)** incorporation through legislation enacted by Congress, in the exercise of the powers conferred by the Territorial Clause, see Const. amend. Art. IV, § 3; or **(d)** by virtue of any act or statute adopted by the Puerto Rico Legislature that amends or repeals Article 68.[15]

### III.   CONCLUSION

A practical and theoretical analysis of the Supreme Court's opinion in Obergefell reveals the inherent conflicts between the principles of liberty and equality and the precepts of the democratic process established in the Constitution, considerations that ultimately led a majority of the Nation's highest court to declare same-sex marriage a

---

[15] See P.R. Laws Ann. tit. 31, § 5.

fundamental right as a matter of constitutional law. See Obergefell, 135 S.Ct. at 2605. A thorough recitation of the historical, political and cultural backgrounds against which the legal question of same-sex marriage arose, eventually dividing the States on the issue, was followed by the unequivocal assertion that the fundamental liberties central to the litigation stemmed from, and were protected by the Fourteenth Amendment. See id. at 2597. Under that Amendment, concluded the Supreme Court, same-sex couples are guaranteed the right to marry and to have their marriages recognized in all States. One might be tempted to assume that the constant reference made to the "States" in Obergefell includes the Commonwealth of Puerto Rico. Yet, it is not the role of this court to venture into such an interpretation.

For the foregoing reasons, the court concludes that the fundamental right to marry, as recognized by the Supreme Court in Obergefell, has not been incorporated to the juridical reality of Puerto Rico. Thus, the court declines to hold that the marriage ban codified in Article 68 of the Civil Code violates the Due Process and the Equal Protection Clauses of the Fourteenth Amendment by denying same-sex couples in Puerto Rico the right to marry or to have marriages validly performed in another jurisdiction given full recognition.[16] Therefore, the parties' joint motion for entry of judgment (Docket No. 64) is hereby **DENIED.**

**IT IS SO ORDERED**.

In San Juan, Puerto Rico, March 8, 2016.

S/ JUAN M. PÉREZ-GIMÉNEZ

**JUAN M. PEREZ-GIMENEZ**
**SENIOR U.S. DISTRICT JUDGE**

---

[16] It is worth noting that in earlier stages of this litigation, the Commonwealth officials defended the constitutionality of Article 68 as a valid exercise of the Puerto Rico Legislature's power to regulate family affairs, including marriage. See e.g. Docket No. 31.